CHARLES PETERSON v. WILLIAM A. ANDERSON.

*Logging contract—Evidence of boom-scale.*

| 44   441|
123   439|

Where there are conflicting versions of an agreement, it is for the jury to find which is true, and nothing can be shut out on the assumption that one is correct rather than the other.

A logging contract was rescinded by mutual agreement, but the party who did the lumbering afterwards sued for a balance due him, and the defendant claimed as a set-off the sum of $500, which he said plaintiff was to pay as part of the rescission, *Held*, that in submitting the matter the judge was warranted in assuming that this item was in dispute.

In a suit for compensation for getting out logs the scale by which to determine the quantity of feet got out was disputed, and it was shown that certain purchasers had received the logs from the boom company, and paid according to the boom scale, with the apparent acquiescence of the parties. Evidence to show what the boom scale was, was ruled out on the ground that the witness under examination, who was secretary of the boom company, did not make it. *Held* erroneous, as the material question was whether or not it was the boom company's scale, and it was for the jury to determine, after finding whether the parties had agreed that the purchasers should be guided by it in receiving the logs and in making payments in their interest.

Error to Newaygo.   Submitted Oct. 13.   Decided Oct. 27.

ASSUMPSIT.   Defendant brings error.   Reversed.

*Albert G. Day* for plaintiff in error.   The testimony of an officer of a boom company whose duty it is to fill out and deliver the boom scales is proper evidence of the scale itself: *Tewksbury v. Schulenberg* 41 Wis. 584.

*George Luton* for defendant in error.   The scale used by the agent of both parties is the only competent evidence of a disputed amount of lumber: *Vaughan v. Howe* 20 Wis. 497.

GRAVES, J.   Anderson brought general assumpsit in August, 1878, to recover among other things for an alleged balance for putting in saw logs, and the jury returned a ver-

dict in his favor for $1116.63.   Peterson then brought error
on certain exceptions to the proceedings.   The record is
rendered ambiguous by much unnecessary matter, and by its
want of connection and other perplexing defects.   Two
written contracts are often alluded to as Exhibits "A" and
" B," and papers so marked are attached to the bill of excep-
tions.   But it does not distinctly appear that either of them
was actually submitted to the jury.   Another writing is
likewise mentioned as bearing on the controversy, but is not
found in the record.

It so happens however that the imperfections suggested
are not fatal to the writ of error.   The point made on the
instructions to the jury relative to the item of $500 claimed
by Peterson as set-off does not appear to be well taken.
Peterson made a bargain with Esty and Earl for the purchase
of certain land for $5500, and it was arranged at the same
time between Peterson and Anderson that the latter should
have an equal half interest by logging on the lands according
to certain terms.   Anderson found himself unable to perform
according to this arrangement, and it was rescinded by mutual
agreement.

It was contended at the trial by Peterson that it was part
of this rescission that Anderson should pay or allow him $500
and that he was entitled to be credited for it.   Anderson
insisted that there was no binding contract in his favor for
an interest in the land, and, moreover, that Peterson agreed
to pay for putting in all the logs just as though there had
been no other contract.   The circuit judge was warranted in
assuming that this item was in dispute and he submitted the
subject fairly.

One of the principal issues at the trial arose upon the
number of feet contained in the logs for which Peterson
should be held chargeable as between him and Anderson.
The latter claimed that it was agreed between them that
one Charles H. Clark should scale the logs and that he did
so; and the scale account made by Clark was given in
evidence.   Peterson, however, denied that he undertook to
be unconditionally bound by Clark's scale.   He swore that

he assented to Anderson's proposition to allow Clark to perform the scaling, but qualified his consent by saying that it would be all right if the scaling was done to satisfaction, and he contended that it was not so done. It was for the jury to pass on these conflicting versions and ascertain which was true, and it was not competent to shut out anything on an assumption that one was correct rather than the other.

The counsel on the part of Peterson, following up his explanation, produced evidence that Lewis & Covell, by authority of these parties, received the logs from the boom company; paid for driving according to the boom scale; sawed the logs and handled the lumber and, out of the proceeds, paid a large demand to Wilcox & Morgan for supplies to Anderson in the course of his putting in the logs, and some other expenses, and paid the residue to Peterson.

He then offered to show the boom scale on which Lewis & Covell had so acted under the alleged approbation of these parties, and also the amount of that scale; and the circuit court ruled out the offer. It was admitted that the witness under examination, who was the secretary of the boom company, did not make the scale, and the ruling seems to have been based on that circumstance. But it was not important who made it. The material consideration was whether it was in fact the boom company scale, and the one the parties acted on as sufficient for their purpose, if such was the case, and it was part of the offer to produce that scale.

It was for the jury to say whether it was true, as Peterson represented, that it was agreed between himself and Anderson that this scale should guide Lewis & Covell in receiving the logs from the boom company and in making payments in the interest of the parties, and if they found such to be the case, or, in other words, found Peterson's version to be the true one, they were then entitled to opportunity to consider the proposed evidence relative to the boom scale on the issue touching the number of feet which ought to be charged against Peterson. *Ortman v. Green* 26 Mich. 209; *Smith v. Kelly* 43 Mich. 390; *Busch v. Kilborne* 40 Mich. 297: *McCreery v. Green* 38 Mich. 172.

In view, therefore, of the opposing theories, the evidence should have been laid before the jury under suitable instructions from the court.

We are not satisfied that the record is shown to contain any error except the exclusion of the evidence referred to.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.