| 79 | 307 |
|----|-----|
| 85 | 314 |

| 79 | 307 |
|----|-----|
| 123· | 439 |

THE CRANE LUMBER COMPANY (A CORPORATION) V. THE OTTER CREEK LUMBER COMPANY (A FOREIGN CORPORATION.)

*Contract—Construction—Sale of lumber—Evidence—Charge to jury —Verdict.*

1. Where a contract for the delivery of lumber provided that it was to be measured "straight measure," testimony of witnesses familiar with the lumber trade is admissible to explain what is meant among dealers in lumber by the term "straight measure," and whether it includes or excludes mill culls.[1]

2. An objection to the testimony of a witness as to the amount of lumber tallied by him, on the ground that the original tally was kept on a shingle or board, and after being copied into a certificate the shingle or board was destroyed, which was the best evidence of the tally, is not well taken. *Jackson v. Evans*, 8 Mich. 482.

3. Where the court, in his general charge, covers a request except as to an item which is not disputed, the request is substantially covered.

4. Where a jury returns a verdict for a specified sum, and interest thereon, it is not error for the court to direct them to retire, and make the legal computation on the amount of the verdict.[2]

5. The following propositions are summarized from the opinion of Chief Justice CHAMPLIN:

---

[1] See *Corneil v. Lumber Co.*, 71 Mich. 350, holding that testimony as to the construction to be placed upon the term "mill tally" was admissible upon the facts in that case.

[2] See *Lithographing Co. v. Randall*, 78 Mich. 195 (head-note 2), for a similar case.

*a*—Ordinarily, the measurement of lumber has reference to the superficial quantity, or the number of superficial feet in a given quantity; and we may regard the custom so universal that, unless the thickness of the several pieces is expressly mentioned, it will be considered as referring to lumber one inch in thickness, or board measure.

*b*—A square foot of surface, and an inch in thickness, has become, by the custom of lumbermen, the unit of quantity in the measurement of lumber.

Error to Benzie. (Aldrich, J.) Argued January 16, 1890. Decided January 24, 1890.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*McAlvay & Grant,* for appellant.

*Pratt & Davis,* for plaintiff.

CHAMPLIN, C. J. The plaintiff is a domestic corporation, and the defendant is a foreign corporation organized under the laws of the state of Wisconsin.

On April 14, 1887, the parties entered into the following agreement:

"SOUTH FRANKFORT, MICH., April 14, 1887.
"We will furnish you two hun. thousand rock elm, delivered in Racine, from logs as cut in woods, to be 12 and 14 feet long, to be sawed to your order, as near as may be, and to be measured straight measure, for the sum of $13.50 per thousand, during the months of June or July, to be paid for as delivered.
"THE CRANE LUMBER COMPANY.
"By B. Brown, Secretary and Treasurer.
"Accepted: OTTER CREEK LUMBER CO.
"By C. T. Wright, Treasurer."

The plaintiff claims to have delivered in Racine, Wis., two cargoes of lumber under the above contract,—one in June, and the other in August, 1887. After the first cargo was delivered, and prior to the delivery of the second, the defendant paid to plaintiff, by draft at 10 days,

$1,551.70; and after the second cargo was received defendant gave to plaintiff its note for $1,000, for 30 days, which was paid. The defendant claims that the lumber shipped to it was not according to contract in either cargo, and that it refused to accept the second cargo without it was first inspected, to which plaintiff would not consent, and that defendant finally agreed to receive it on the dock subject to future adjustment with plaintiff. No amicable arrangement was arrived at, and plaintiff brought this suit to recover what it claims to be a balance due to it from defendant. The plaintiff recovered in the trial court, and defendant brings error.

The first error assigned is to the ruling of the court in permitting a witness to testify as to the quantity of lumber contained in the two cargoes. The witness had testified that he tallied the lumber on board the vessels, and kept the tally upon a shingle or piece of board, and then copied it into a certificate, when the shingle or board was thrown away. The objection was that the original tally made on the shingle or board was the best evidence. The error is not well assigned. See *Jackson v. Evans,* 8 Mich. 482, and authorities there cited.

We cannot determine whether the second error alleged is well assigned or not, as the objection is to a question which was overruled, but the answer of the witness is not contained in tne record. If it be granted that the question was open to the objection stated, yet, if the answer was not prejudicial, the judgment would not be reversed for the error of permitting the question to be asked.

The third assignment of error reads as follows:

"The court erred in refusing to charge as requested by defendant in its request to charge No. 2, as follows: 'By the contract mentioned, the plaintiff agrees to sell and deliver to defendant 200,000 feet rock elm in Racine,

Wis., from logs cut in the woods, to be 12 and 14 feet long, to be sawed as defendant ordered, as near as may be, the lumber to be measured straight measure, to be paid for at the rate of $13.50 per thousand feet.'"

The court charged the jury, among other things, as follows:

"It is an agreement that the plaintiff agrees to sell, and the defendant to purchase, certain rock elm lumber, amounting to 200,000 feet, to be delivered at Racine, Wis., from logs as cut in the woods, and sawed to the order, as near as may be, of the defendant, to be measured straight measure, to be delivered during the months of June and July, to be paid for as delivered."

This charge covers substantially the request of the defendant. The only omission is the price per 1,000 feet, which was not disputed, for all lumber answering to the contract.

The fourth assignment of error, based upon the refusal to give defendant's third request to charge, is overruled. The request is based upon a fact assumed as proved, when the testimony concerning it was conflicting.

The fifth assignment is as follows:

"The court erred in refusing to charge defendant's request to charge No. 4, as follows: 'The term "straight measure" is a term of measurement, and would include only such lumber as by the trade would be accepted under that term. This term designates what amount and kind of lumber was to be shipped, and these parties are to be bound by the definition of that term as known to the lumber trade.'"

This assignment may be considered in connection with the sixth, which reads as follows:

"The court erred in charging the jury that 'under this agreement the plaintiff agrees to sell, and the defendant to buy, all of the lumber cut from said logs, and delivered under its terms, except such, if any, as may, from the fact of the logs being rotten or worthless, or from being poorly or carelessly manufactured, be unmerchant-

able, or not such as is ordinarily regarded as any grade of lumber recognized as being of commercial value. That is as to the matter of construction of the contract, and that will govern you as to what lumber comes under the contract that was shipped, and what, if any, fails to come under the contract?'"

The main points in dispute between the parties relative to the lumber were (1) whether mill culls were included in the contract; and (2) whether the cargoes contained other than rock elm. Upon these two points testimony was introduced upon both sides as to whether the term "measured straight measure," used in the contract, included or excluded mill culls. It is contended on behalf of defendant that the words in the contract were used in a peculiar and technical sense known to the lumber trade, and that the contract must be construed in that sense. The plaintiff, on the other hand, contends that there is nothing peculiar or ambiguous about the language used as applied to logs, and that the only and obvious meaning is that the measurement is to include all lumber sawed from logs, without regard to quality, which have a commercial value; that the language has no reference to the grade or quality of lumber, but excludes the idea of quality or inspection, and relates only to the quantity which the logs yield. The court evidently coincided with this view of the plaintiff's counsel, as will be seen from that portion of his charge last above quoted, in the sixth assignment of error. The defendant had introduced testimony tending to show the quantity of rock elm, and of mill culls, and other lumber contained in the two cargoes, and it furnished to plaintiff a statement thereof, in which it charged itself with the rock elm at $13.50 per 1,000, and with the rock-elm mill culls and other lumber at $3 per 1,000 feet; and Mr. Wright, the treasurer of the defendant corporation, testified that mill culls and gray elm were worth only $3 per 1,000

feet.  The quantity of the respective grades was testified
to on behalf of defendant by Jens Beck.  The court
instructed the jury:

"If you find that the measurement of Mr. Beck in
Racine was correct, and that the statement of the defend-
ant is a correct statement therefrom, and the prices
allowed for the cull lumber, and the other lumber, were
what it was reasonably worth at that time and place,
then you will find that at the commencement of this suit
defendant owed the plaintiff the sum of one hundred and
fifty-seven dollars and fifty-eight cents."

The jury returned a verdict of $587.70, "and interest
on the same," so that it is evident that they not only
included the mill culls in the lumber sold, but that they
allowed $13.50 per 1,000 therefor.  Therefore it becomes
important to determine whether the term "measured
straight measure" included or excluded mill culls.

Ordinarily, the measurement of lumber has reference
to the superficial quantity, or the number of superficial
feet there is contained in a given quantity; and we may
regard the custom so universal that, unless the thickness
of the several pieces was expressly mentioned, it would
be considered as referring to lumber one inch in thick-
ness, or board measure.  A square foot of surface, and
an inch in thickness, has become, by the custom of lum-
bermen, the unit of quantity in the measurement of
lumber.  The contract under consideration calls for
200,000 feet board measure, but the method of measure-
ment is defined.  That is, it is "to be measured straight
measure."  While this expression may be very clear to
those engaged in the lumbering trade, to an ordinary
individual, not so engaged, it is not so.  Indeed, from
the conflict of testimony upon the meaning of the expres-
sion given by those so engaged, it does not appear to be
very clearly defined in the trade.

We think the testimony introduced by both parties,

without objection, of those familiar with the lumber trade, to explain what is meant among dealers in lumber by the term "straight measure," and whether it included or excluded mill culls, was properly received. Leake, Cont. 204, and cases cited in note e; *Grant v. Maddox,* 15 Mees. & W. 737. And see Smith, Lead. Cas. note to *Wigglesworth v. Dallison;* 1 Greenl. Ev. § 280; Best, Ev. § 228. And, as some of the witnesses testified that the term would not include mill culls, and other witnesses as positively testified that it would, the court was not warranted in construing the contract so that the term included mill culls. He should have left that question to be decided by the jury, as a question of fact, and instructed them, if they found from the testimony it did include mill culls, then the plaintiff could recover for the mill culls contained in the two cargoes at the price specified in the contract, and, if they found that it did not include mill culls, then they could only allow to plaintiff the market value of mill culls at Racine at the time of delivery; and he should further have instructed them that if they were not satisfied from the testimony that the term, among lumber dealers, had a known and well-understood signification, so that the parties must be presumed to have entered into the contract with reference to such known and commonly-understood signification, and that the minds of the parties met upon such meaning, then the plaintiff could not recover upon the contract for such mill culls, but could recover, under the common counts of the declaration, what such mill culls were worth in the market at Racine in June and August, 1887.

The jury, under the instructions given them by the court, returned a verdict ·in favor of the plaintiff for $587.70, and interest on the same, whereupon the court instructed them to return to the jury-room, and compute

interest on the amount of their verdict.   To this instruction counsel for defendant excepted. ⸱ The jury returned again into court, and rendered a verdict for the plaintiff, and assessed its damages at the sum of $623.83.   The exception taken to the instruction of the court is not good.   The jury evidently computed interest on the amount found due to plaintiff from August 8, 1887, the time of delivery of the lumber, and when the payment therefor was due.   The court erred in instructing them to compute interest only from the time of the commencement of suit.

The judgment must be reversed for not giving the defendant's fourth request, which was proper, and for not submitting to the jury the question of fact as to the meaning of the term to be "measured straight measure," under the conflicting testimony, and framing his instructions accordingly.   A new trial is ordered.

The other Justices concurred.