DAVID A. WELCH, WILLIAM WELCH, AND ELISHA L. WELCH v. FRANK A. PALMER, FRANK R. GOODRICH, AND BENJAMIN T. LINCOLN.

*Contract—Sale of lumber—Evidence—Partnership—Bill of exceptions.*

1. The failure of timber owners who have contracted for its manufacture, and for the delivery of the lumber upon their docks, where the manufacturers' control over it ends, to make and preserve a tally of the lumber as per their agreement, entitles the manufacturers to introduce any other competent proof of the amount of lumber manufactured.

2. Scale-books made by a scaler at the time the scaling was done, from a scale-board, upon which he put down the measurement of each log and the number of feet it contained, and when full transferred sometimes such measurement, and at other times the number of logs and the number of feet they contained, to said scale-books, which he used as *memoranda* in testifying to the number of feet of lumber scaled, are admissible in evidence, within the spirit of the rule adopted in *Lumber Co. v. Lumber Co.,* 79 Mich. 307.

3. In a suit in which both plaintiffs and defendants were copart-

ners the defendants offered to show by one of their number that he had settled with one of the plaintiffs his portion of plaintiffs' claim, and that this partner had relinquished the same to the witness individually, as an admission of the amount due plaintiffs, and as a dissolution of the partnership; which proposed testimony is held inadmissible for either purpose.

4. The proper practice in making objections is to state briefly the ground thereof. The arguments form no part of the record, and parties should not be put to the expense of having them written out or printed.

5. The practice of making a bill of exceptions by taking a complete transcript of the reporter's minutes, and attaching to it a heading and an ending, cannot be too severely condemned.

6. In preparing a bill of exceptions records should be condensed, and only the testimony inserted necessary to raise the questions involved, which, when possible, should be put into a condensed narrative form.[1]

Error to Benzie. (Aldrich, J ) Argued February 27, 1891. Decided April 17, 1891.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*F. E. Withey,* for appellants, cited no authorities.

*E. A. Whitney* and *Smurthwaite & Higgins,* for plaintiffs, contended for the doctrine of the opinion.

GRANT, J.   The defendants, being the owners of a tract of timber, mainly hard-wood, entered into a contract with the plaintiffs, by which plaintiffs agreed to cut and manufacture said timber into lumber, and deliver the same on the docks in South Frankfort.   The price agreed upon

---

[1] See *Cole v. Circuit Judge,* 77 Mich. 619, where the practice in settling bills of exception is fully stated. See, also, the following cases upon the same subject: *Manning v. Bresnahan,* 63 Mich. 584; *Gass v. Van Wagner,* Id. 610; *Wilson v. Bowen,* 64 Id. 184 (head-note 8); *People v. LaMunion,* Id  709; *Wessels v. Beeman,* 66 Id. 343; *People v. Coughlin,* 67 Id. 467 (head-note 5); *People v. O'Brien,* 68 Id. 468 (head-note 4); *Stevens v. Rose,* 69 Id. 259; *Chadwick v. Walsh,* 70 Id. 627; *Whitaker v. Kilroy,* Id. 635; *Lumber Co. v. Gray,* 73 Id. 363; *Maltby v. Plummer,* Id. 539; *Store Co. v. Harrison,* 75 Id. 197 (head-note 3).

was $8 per thousand feet for all except basswood and elm, and $7.75 per thousand for basswood and elm. A certain amount was to be paid each month for the logs cut and skidded, upon an estimate to be made by defendant Goodrich, or some other competent person. Of the balance all but 50 cents per thousand was to be paid each month for all lumber delivered, according to an estimate to be made by some competent person thereafter to be agreed upon. Fifty cents per thousand was to be retained until the lumber was shipped by defendants. An annual settlement was provided for in the following language:

'The final settlement each year shall be made on the lumber tally on the lumber as shipped, and all shall be measured by the fifteenth of September."

Plaintiffs entered upon the work, and cut and manufactured a portion of the timber. The contract was finally mutually abandoned by the parties, and the defendants purchased the plaintiffs' mill at an agreed price. A dispute arose between them as to the amount of timber which had been manufactured. After an unsuccessful attempt to arbitrate, plaintiffs on September 15, 1888, brought this suit. Other items were claimed outside of the contract. The balance claimed by plaintiffs was $6,175.05. The amount conceded to be due plaintiffs by defendants was $677.54. The trial resulted in a verdict and judgment for plaintiffs of $3,396.45.

The sole controversy on this branch of the case was the amount of lumber manufactured. The legal question for determination is the competency of the evidence introduced by plaintiffs for the consideration of the jury. The lumber tally of all the lumber as shipped was not and could not be produced by the defendants. Defendants' counsel says that, owing to carelessness and mismanagement of all parties, no perfect account of the amount of lumber sawed and delivered, except as stated

in the books of defendants, was kept, and that a great number of the original scale-sheets of the scale made at the shipping point were lost or destroyed. Some of these were produced, and the court instructed the jury that they were conclusive between the parties, being the tally provided by their contract. It was the duty of the defendants, and not of the plaintiffs, to secure a tally of the lumber as shipped, and to preserve the proper evidence of such tallies. Plaintiffs had performed the contract by the delivery of the lumber upon the docks, where their control over it ended. Having failed to make and preserve this tally, the defendants left the case open to the plaintiffs to introduce any other competent proof of the amount of lumber.

They introduced one John Miller, who scaled the logs, some upon the skidways and others at the mill. He testified that the scale is what is termed "merchantable;" that is, with the culls out. In making it he used a small scale-board, upon which he put down the measurement of each log, and the number of feet each contained. When the scale-board was full he transferred to two small books, which he kept for the purpose, sometimes the measurement of each log, and at other times the number of logs, and the number of feet they contained. He then cleaned off his tally-board, using it for a new tally. Occasionally, after filling the tally-board, he continued the talley upon a book. He testified fully and explicitly, both on direct and cross-examination, as to the method of making this tally, and as to the accuracy of the figures transferred to these books. Using these books as *memoranda*, he testified to the number of feet of lumber which he scaled. The books were then introduced in evidence under the defendants' objection that they were incompetent, because not copies of the original tally-

boards, but only the footings. It was owing to the carelessness and neglect of the defendants that the tally agreed upon was not made and preserved. The testimony of the witness Miller, aided by these *memoranda*, which he himself made at the time, was competent. No question is made of his right to use them to refresh his recollection. Evidently he could not testify to the figures without them. These books were made at the time the scaling was done. They were taken from the scale-boards. We think they were admissible, within the spirit of the rule adopted by this Court in *Crane Lumber Co. v. Otter Creek Lumber Co.*, 79 Mich. 307.

The defendants' proofs consisted largely of their books of account, in which they claim to have credited plaintiffs with the full amount of the lumber, and of evidence of the total amount of shipments made by them, and including lumber purchased from other parties. They showed the amount purchased from other parties and shipped with that manufactured by plaintiffs, deducted from the total amount so shipped the amounts purchased from other parties, and appear to claim that this is the best and conclusive evidence of the actual amount of lumber gotten out under this contract. This was evidently the best evidence defendants could produce, but it was not conclusive, and was no more binding on plaintiffs than plaintiffs' best evidence was binding upon them. The evidence was all competent, and its weight was for the determination of the jury.

After the attorney for the plaintiffs had opened his case to the jury, and after considerable testimony had been taken, counsel for defendants stated to the court that he desired to make a record by excepting to certain language used by counsel in opening the case, that there was some fraud in the matter on the part of defendants.

The objection came too late, nor does the record show what the language was. We cannot, therefore, determine whether or not an error was committed.

Defendants offered to show by the defendant Palmer that he had settled with the plaintiff William Welch his portion of the claim, and that William had relinquished the same, not to the defendants, but to him individually. They offered it for two purposes:

1. As an admission of the amount due plaintiffs.
2. As a dissolution of the partnership.

The court held the offer incompetent. The testimony was inadmissible for either purpose. It was not binding upon nor made in behalf of the plaintiffs by William, nor does it appear to have been made by Palmer on behalf of the defendants. It was a private matter between the two. In deciding the question the judge stated to defendants' counsel that it would be proper for him to show an admission by any member of the firm of the amount due, and instructed him to proceed with the examination. The counsel there dropped the matter, and asked no questions in regard to any admission. There was no error in this ruling of the court

It was conceded that the defendants received about 402,000 feet of culls. The plaintiffs claim that the defendants agreed to pay them a certain amount per thousand, while the defendants claimed the agreement to be that they should pay what these culls netted them when sold. The court charged the jury that, if the contract was as claimed by plaintiffs, it would be within the statute of frauds, unless they found that the lumber was delivered. The charge of the court was full and explicit upon this contract, and was correct.

There are many other assignments of error which we do not consider of sufficient importance to be here noticed.

We find that all the rulings of the court involved were correct.

The record in this case consists of 442 pages. The testimony is all printed. A large portion of the record is taken up with the statements and discussions between the counsel and the court. A record one-quarter the size of the present one would have been sufficient to raise all the questions involved. The proper practice in making objections is to state briefly the grounds thereof. The arguments form no part of the record, and parties should not be put to the expense of having them written out or printed. The bill of exceptions in this case was evidently made out by taking a complete transcript of the reporter's minutes, and attaching thereto a heading and an ending. Such practice cannot be too severely condemned, It imposes unnecessary labor upon counsel and upon this Court. Records should be condensed, and only the testimony inserted necessary to raise the questions involved, and that, when possible, should be put in a condensed narrative form.

Judgment affirmed, with costs.

The other Justices concurred.