GORDON *v.* CLEVELAND SAWMILL & LUMBER CO.

1. LOGS AND LOGGING — SCALING — MERCHANTABLE LOGS — MILL CULLS—EVIDENCE.

Defendant contracted to buy all the merchantable white-pine sawlogs upon land described in the contract.   The logs were to be scaled "according to the Scribner rule, making allowance for all defects."   In an action for the price of the logs, defendant claimed that the scale should make deduction for mill culls, though they have a merchantable value.   There was evidence that there are mill culls in lumber made from sound logs, showing no visible defects.   The court left it to the jury to determine whether a merchantable log might contain mill culls, and, if so, whether they should be excluded from the scale.   *Held*, sufficiently favorable to defendant.

2. SAME—ALLOWANCE FOR DEFECTS.

Where the scale provided for by a logging contract is to "make allowance for all defects," visible defects are contemplated, and a scale which allows for possible defects, not visible to the scaler, is not binding upon the parties.

3. Sale—Warranty of Title—Action for Price—Defenses.

Where the vendee in a contract for the sale of logs, reserving title in the vendor until payment of the purchase price, sells the logs to a third person, warranting his title, the latter cannot, by buying in the claim of the original vendor for a balance due, defeat a recovery by his immediate vendor for the value of the logs delivered over and above the amount of the claim so purchased.

Error to Marquette; Stone, J. Submitted January 4, 1900. Decided March 27, 1900.

*Assumpsit* by John R. Gordon against the Cleveland Sawmill & Lumber Company for logs sold and delivered. From a judgment for plaintiff, defendant brings error. Affirmed.

*Clark & Pearl* (*B. J. Brown*, of counsel), for appellant.

*Button & Culver* (*Watts S. Humphrey*, of counsel), for appellee.

Moore, J. Plaintiff sold to defendant a quantity of sawlogs. Advances were made by it to plaintiff from time to time. A dispute arose between the parties. The plaintiff claimed there was due him upwards of $18,000. The defendant claimed it had overpaid the plaintiff, and that upwards of $4,000 was due it. From a judgment in favor of plaintiff, the defendant has brought the case here by writ of error.

A contract was made between the parties, the material portions of which read as follows:

"This agreement, made and entered into this seventh day of October, A. D. 1897, by and between the Cleveland Sawmill & Lumber Company, of Cleveland, Ohio, as parties of the first part, and John R. Gordon, of the city of Marquette and State of Michigan, party of the second part, witnesseth: That the said second party has this day sold to said first parties, they having bought the same, all the merchantable white-pine sawlogs to be cut from the lands described on memorandum of same herewith at-

tached and forming a part of this contract; the quantity now estimated to be from seven million feet to nine million feet of logs.  \*   \*   \*   All of said timber logs aforesaid, from eighteen feet to twenty-four feet, to be sound and straight, and no logs less than nine inches at the top end are to be put in under this contract, except by the consent of the scaler. Said logs are to be carefully endmarked G2, G3, G4, and G5, and to be scaled on the skidways in the woods, as put up, by Daniel Driscoll, Joseph McNaughton, and Frank F. Hayes, according to the Scribner rule, making allowance for all defects.
\*   \*   \*   It is particularly understood and agreed that the aforesaid Frank F. Hayes is to make what is known as a 'numbered scale' of all logs which he shall be called upon to scale, the same being open to examination by Joseph McNaughton, aforesaid, who is to inspect from time to time the scale so made by said Hayes, making comparisons between the scale of various logs made by himself and heretofore scaled by said Hayes, making report each week of this comparison to each of the parties to this contract, and in the end is to determine as to whether there shall be any variation made from the said numbered scale made by Hayes, either increasing or decreasing the same, and, if so, what percentage. After the logs are scaled as aforesaid in the woods, the said scalers are to make a piece count of all logs hauled and delivered on the various banking grounds, and, if in the end it is found that there is a variation between the number of logs scaled in the woods and those delivered in the bank, such variation shall be adjusted upon the basis of a general average contents of each log as generally scaled in the woods; any cull logs that may be hauled to the bank being not considered, but reported as such.

"The said logs are to be delivered to the said first parties in booms to tug in Lake Superior, at points near Sauks Head lake, the mouth of the Salmon Trout river, and the mouth of the Pine river. And, after complete delivery on part of said second party, a careful survey of the various streams and banking grounds is to be made by some party appointed by said first parties, for the purpose of ascertaining if any logs banked have not been delivered in booms to tug as aforesaid; and, in case any logs are found to be so not delivered, a deduction is to be made from the number of logs reported delivered on the bank, and the number of feet to be ascertained by applying the average

number of feet found to be contained in each log put in under this contract. * * *

"Said first parties hereby agree to pay to the said second party the sum of nine dollars and fifty cents ($9.50) per thousand feet for each and every thousand feet of said logs so delivered in booms to tug in Lake Superior as aforesaid. * * *

"The said second party further agrees to deliver the said logs to the said first parties free from all claims and incumbrances of whatever name or nature, and further agrees to warrant and defend the said first parties against all liens of whatever name or nature."

The plaintiff did not deliver all the logs, because about March 1st the snow went off, making it impossible to move the logs after that date, though he had plenty of teams and appliances. No claim is made by defendant for damages because of failure to deliver the full quantity of logs.

The scale contemplated by the contract to be made in the woods was not made. McNaughton left the woods about the middle of the winter, and did not return. The plaintiff claims he left the woods at the request of the defendant, to attend a lawsuit at Cleveland as a witness in a case in which defendant was interested, while defendant claims he was sick. The testimony is very clear this scale was abandoned. The testimony indicates it was later agreed that Driscoll should scale the logs while in the booms. This was not done, Driscoll for some reason refusing to scale them while in the booms. It is the claim of the defendant that it was agreed that Driscoll should scale the logs while they were going up the jack-hoist. This is denied by the plaintiff. The jack-hoist was used to lift the logs from Lake Superior to a pond in which the water stood 10 or 12 feet above the water in Lake Superior. It was an incline, with an endless chain, in which there were spurs, which caught upon the logs, and conveyed them up the incline, and dumped them into the pond. Mr. Driscoll stood at one side of this incline, and made his scale as the logs were moving. It is claimed by plain-

tiff, and there is testimony tending to show, that these logs passed Mr. Driscoll at the rate of one every 10 or 12 seconds, some of them so near together that he could not get his rule upon the small end of the log, and that, if he had desired to do so, it was impossible for him to make a proper inspection. Mr. Driscoll made a count of the logs, which showed that there was something more than 38,000 of them. Mr. Gordon had an inspector at the jack-hoist for a time, and also attempted to have the logs scaled and lumber measured in the mill. His men were put out of the mill. He finally resorted to the court, and succeeded in having nearly 16,000 logs counted and the lumber measured by men employed by him. All the scales and measurements made by persons employed by either party were permitted to go to the jury. Mr. Gordon bought the timber from which these logs came from McCall & McBurney, who retained title to the timber until it was paid for. After these logs were cut, and most of them delivered, defendant was notified that McCall & McBurney still had a claim, represented by the notes of Mr. Gordon, of a little more than $4,000, for the purchase price of the timber. The defendant furnished the money to take the notes out of the bank, and had the notes transferred to it. It now claims that, as plaintiff did not have the title to the logs, he could not recover from the defendant for the logs sold to it.

There are a good many assignments of error, but we think but two questions need discussion: *First.* Did the court err in its instructions to the jury as to the measurement of the logs? *Second.* Is it true plaintiff cannot recover anything which may be due him because he did not pay McCall & McBurney that portion of his debt paid to them by defendant?

By the terms of the contract, the defendant agreed to buy all the merchantable white-pine sawlogs upon the land described in the contract. All the witnesses are agreed that a merchantable log is one that will make sufficient lumber to make it profitable to take it to the mill

and have it made into lumber. It is admitted by counsel for defendant that all the logs marked by the scalers were merchantable logs, within the terms of the contract. On the part of the plaintiff it is claimed that, when a log is decided to be merchantable, it is the duty of the scaler, under the contract, to scale it according to the Scribner rule, making allowance for all visible defects, and to then set down the scale, and that defendant should be required to pay for as many feet as the log contains after the allowance for the defects is made, irrespective of the grade into which the lumber will go when manufactured. It is the claim of defendant that it is the duty of the scaler in making his scale to make such allowances as shall result in the purchaser getting as many feet of merchantable lumber from the log as the scale makes the log contain, excluding all mill culls, even though the mill culls have a market value.

A great deal of testimony was introduced upon both sides as to the proper manner of making the scale, as to what constituted merchantable lumber, and that mill culls had a market value and the extent of that value. The court left the question to the jury, after calling their attention to the terms of the contract, in the following language:

"In ascertaining and determining the number of feet contained in merchantable logs so passed by the scaler, I charge you that these scalers would be bound, in making such determination, to follow the method of scaling therein provided for. So, gentlemen, I repeat that the question, after all, for you to determine, is not how much lumber was produced from these logs, as your primary inquiry, but how many feet of merchantable logs were sold? As I shall say to you further on, you will have occasion undoubtedly, in considering this case, and be compelled, to go—Among other things, perhaps, that will be for you to say, perhaps, as you shall view one branch of the evidence, you may find it necessary to look at the lumber scale and the product of the logs; but for what purpose? For the purpose of determining the number of feet of merchantable white-pine sawlogs. After all, it comes back to that.

"Now, gentlemen, what is a merchantable white-pine sawlog? Under the evidence in this case, you will say what that was, and you will say whether the evidence in this case shows that these logs were merchantable logs. And I advise you that a merchantable log is such a log as would be worth taking off the land to be converted into lumber of various grades to be sold in the market at some market price. Such a log, in the judgment of the court, would be a merchantable log. Now, gentlemen, is it a log that may contain mill culls? I shall leave that to you as a question of fact, under the evidence in this case. You will look over the evidence.

"It is contended here, on the part of the plaintiff, that such a merchantable log may contain more or less of cull lumber, and that when the logs are sold as logs, and all the visible defects have been scaled out, and the log is passed as a merchantable log, that then you are concerned simply as to the contents of that log. On the other hand, it is contended that nothing should be allowed here but the product; that is, what it will make of merchantable lumber, exclusive of the mill culls. It is a question you will have to pass upon; bearing in mind that the plaintiff has the burden of proof here to maintain his case by a preponderance of evidence. And you may consider the product and its quality as bearing on the question as to whether the logs were, or what quantity of them were, merchantable in this case. What we are interested in is the quantity of merchantable white-pine sawlogs,— for the merchantable white-pine sawlogs delivered by the plaintiff, and for which he is entitled to recover,—and then, as I have said, their value, understanding that their value cannot exceed the contract price, for when a party sues to recover here, as the plaintiff has, and taking his position upon the common counts in *assumpsit*, he cannot recover exceeding the contract price and he cannot recover the contract price unless the logs are shown to be worth that sum. It is compensation that he seeks to recover. In this case there is nothing by way of recoupment or claim of damages on the part of the defendant for the nondelivery of any logs, or for any other damages claimed to have been suffered because of the nonperformance of this contract.

"So it comes right back to the question of the quantity and value of the logs delivered, or the merchantable logs delivered. I have watched the argument in this case, and

I see that the plaintiff claims nothing at your hands except what he claims as merchantable logs.

"Under the terms of the contract in question, this scale of the merchantable logs was to be made with Scribner's rule, the scaler making allowance for all defects; and the defendant undertook and promised to pay the plaintiff for each and every thousand feet of said logs—that is, merchantable logs—delivered in accordance with the terms and provisions of the contract; and I charge you that a scale of these logs under that provision would require the scaler to throw out or exclude from his scale all visible defects in the log which would prevent its making lumber, and that the plaintiff was entitled to be credited with every thousand feet of lumber, less visible defects, as shown by Scribner's rule, that the logs contained, irrespective of its quality or grade. Why? Why, because this was a sale of sawlogs, gentlemen. And suppose that they had not yet been manufactured, and were not to be manufactured for 10 years; how could we then ascertain anything about the product? The sale contemplated, as I said, the transfer of the title to sawlogs, as logs,—merchantable logs. And the moment you have reached the quantity of merchantable logs you have reached the amount that the plaintiff is entitled to recover in this case.

"The provisions in the contract with respect to the scale and measurement of the logs is a subject on which the parties have a right to contract; and in this agreement the parties have fully covered that subject by their agreement, which is binding upon the court and jury, and the intention of the parties as to the mode or method of such scale must be gathered from the language of the instrument itself. As the same is unambiguous, I charge you that in this contract the defendant, having agreed to pay the plaintiff nine dollars and fifty cents per thousand feet for each and every thousand feet of said logs, means each and every thousand feet of said logs that will make lumber as shown by the Scribner rule, after making allowance for all the visible defects in said logs. I ask you again, how could these logs have been settled for if they had not yet been manufactured into lumber? Is it not conceded by all the witnesses that the only thing the scaler can take out is visible defects? Why, then, it is a sale and transfer of merchantable logs. If the visible defects have all been taken out, the result or remainder of what is left in that log is what is passed by the sale."

It must be borne in mind that this was not a contract for the purchase of merchantable lumber, but it was a contract for the purchase of merchantable logs.   There is no controversy but that the logs which were delivered were merchantable, but it is said they were not properly scaled.   If the parties had wanted the mill culls excluded from the scale, it would have been easy to put it into the contract.   There is an abundance of testimony that in good logs there will be mill culls.   In the testimony of Mr. Knight, the secretary of the company, the following occurs:

" *Q.* Knowing, as we do, as I understand you to say, that nearly all merchantable logs have mill culls in them, would you consider that a scaler was doing his duty that made a deduction, in a sound log, for the mill culls that might be in it?

"*A.* No; I should think he was not doing his duty, even though he felt certain there were some mill culls in the log.

" *Q.* A good many mill culls are made, are they not, by sawing?

"*A.* Well, I presume so,—a few.   They may be made from defective sawing."

The testimony indicates very clearly there will· be some mill culls in the lumber made from sound logs which do not show any visible defects.

Suppose that, instead of buying logs yet in the tree, the logs were already cut, and, after seeing them, defendant had agreed to pay $9.50 a thousand feet for them, the logs to be scaled according to the Scribner rule, making allowance for all defects.   If the logs were delivered, and such a scale made, could the defendant be heard to say that the scaler should not only make allowance for all defects, but should also make allowance for all mill culls ? Speaking for myself, I do not think this would be a fair construction of the contract.   The court, however, left it for the jury to say, under the proofs, whether a merchantable log may contain culls, and whether it should be so scaled that its product will be merchantable lumber,

exclusive of the mill culls. The defendant cannot complain of this. *Peterson* v. *Anderson*, 44 Mich. 441 (7 N. W. 56); *Corneil* v. *Lumber Co.*, 71 Mich. 350 (39 N. W. 7); *Crane Lumber Co.* v. *Otter Creek Lumber Co.*, 79 Mich. 307 (44 N. W. 788); *Welch* v. *Palmer*, 85 Mich. 310 (48 N. W. 552); *Daggett* v. *Hayward*, 95 Mich. 217 (54 N. W. 764).

The court called the attention of the jury to the claims of the parties in relation to the scale of Mr. Driscoll at the jack-hoist, and used this language:

"I charge you that if you find that this scaler was agreed upon between the parties to make the scale, and if he had made the same in accordance with the provisions and terms of the contract, such scale would be binding upon both parties; but I charge you that if he made this scale with the intention and for the purpose only of accounting for the merchantable lumber in each of the logs scaled, excluding all of the mill culls from such scale, this was not the scale agreed upon, and was not binding upon the plaintiff."

Upon a motion for a new trial, and here also, it was and is earnestly insisted this language was error, because the court substituted his judgment for that of the jury. We cannot do better in disposing of this assignment of error than to quote the language of the trial judge used in denying the motion for a new trial:

"Driscoll had testified that he had scaled the logs at the hoist so as to exclude all mill culls. I think it may be said to be the undisputed evidence in the case that the object and aim of a proper scale is to give the contents of the log, excluding visible defects, and that when a proper scale is made, and all visible defects are excluded, yet in the product of the log there will be more or less of mill culls, owing to defects that were not visible to the scaler. A scale made to exclude all mill culls must have deducted more than visible defects, and must have made an additional allowance for mill culls. Such a scale, it seems to me, was not the scale contemplated by the contract, for the 'making allowance for all defects' there referred to must have meant visible defects; and I therefore charged the jury 'that, if he made this scale with the intention

and for the purpose only of accounting for the merchantable lumber in each of the logs scaled, excluding all of the mill culls from such scale, this was not the scale agreed upon, and was not binding upon the plaintiff.' The testimony of Driscoll being undisputed that such was his purpose, I think that I might properly have gone further and told the jury positively that his scale was not such a scale as the parties contemplated in the contract. But I left the jury to find the character of this scale. Unless the defendant is right in this contention, that only merchantable lumber should have been considered in the scale, I do not see any error in this part of the charge."

It is said there is no evidence upon which the jury could base its verdict. We agree with the trial judge that there was evidence sufficient to base it upon. The plaintiff attempted before the logs were manufactured to have them scaled by some one besides Driscoll. He attempted to have them scale the logs or measure the lumber while the logs were in process of manufacture. He was not aided in either of these efforts by the defendant. He was compelled to make his case as best he could. Mr. Bradley and Mr. Long were employed by the plaintiff. They worked together; Mr. Bradley counting nearly 16,000 of the logs, and Mr. Long measuring the lumber which came from them. The result of their work was put before the jury. There was evidence that the average in size and quality of the logs which were delivered was about the same, and that there were upwards of 38,000 of them delivered. There were *data* from which the verdict of the jury can be justified.

Is the claim of defendant that, because plaintiff has not paid McCall & McBurney in full for the timber, he cannot recover for the logs sold and delivered to defendant, well taken? The court said to the defendant that the amount it paid to McCall & McBurney for the notes given by Gordon could be set off by it in this action. The defendant declined to use the claim as a set-off, but insists that, for want of title on the part of plaintiff, he cannot recover. If it be conceded that by the purchase of these

notes defendant succeeded to all the rights of McCall & McBurney, does that defeat the claim of the plaintiff? By this purchase defendant obtained no greater rights than McCall & McBurney had. Upon the payment of the notes to McCall & McBurney, their lien or right, whatever it might be, to the logs would be extinguished. Would not the same thing be true when the notes passed to the defendant? If the claim of the defendant is tenable, had they paid plaintiff nothing upon the logs which they obtained from him, valued at upwards of $50,000, by the purchase of the notes, amounting to but $4,000, they could defeat his recovery. This is not just, and we are not convinced it is the law. The jury have found that plaintiff delivered defendant enough logs to amount, at a valuation not exceeding the contract price, to enough not only to pay all that had been advanced to him by defendant, but what had been paid by the defendant to McCall & McBurney for the notes, and a considerable balance besides.

Judgment is affirmed.

MONTGOMERY, C. J., HOOKER and GRANT, JJ., concurred. LONG, J., took no part in the decision.