HENRY W. CORNEIL v. THE NEW ERA LUMBER COMPANY.

*Logs and logging — Contract— Construction of term " mill tally "— Evidence—Custom and usage.*

In this case it is held that in view of the fact that there are times and places that lead to different usages in economizing lumber, the old processes being more wasteful than the new, and what was once not worth saving being now frequently of commercial

value, grades being multiplied and subdivided, and sawing closer, there was no objection to receiving testimony as to the construction placed upon the term "mill tally;" and the witnesses whom the jury followed having testified that it included all that was saved and set apart as proper to be classed as lumber, including "mill culls," which testimony is in harmony with the apparent meaning of the term, and warrants the conclusion reached by the jury, the judgment is affirmed.

Error to Oceana. (Russell, J.) Argued June 28, 1888. Decided July 11, 1888.

*Assumpsit* on logging contract. Defendant brings error. Affirmed. The facts are stated in the opinion.

*J. C. Fitz Gerald (F. A. Stace,* of counsel), for appellant, contended:

1. The interpretation of the agreement to pay according to the "mill tally" was wholly with the court, whose province it was to determine its proper construction and legal effect; citing *Thompson v. Richards,* 14 Mich. 172; *Stadden v. Hazzard,* 34 Id. 76; *Paine v. Ringold,* 43 Id. 341; *McKenzie v. Sykes,* 47 Id. 294; *Spaulding v. Coon,* 50 Id. 622; *Ferris v. Wilcox,* 51 Id. 105; *Ranney v. Higby,* 5 Wis. 62.

2. It is not competent to explain the meaning of words used in a written instrument by the testimony of witnesses; citing *Harvey v. Cady,* 3 Mich. 431; *Adair v. Adair,* 5 Id. 204; *White v. Bailey,* 10 Id. 155; *Phelps v. Town,* 14 Id. 374; *Ins. Co. v. Throop,* 22 Id. 146; *Black v. Ward,* 27 Id. 191; *Battershall v. Stephens,* 34 Id. 68; *Spence v. Bowen,* 41 Id. 149; *Johnson v. Cranage,* 45 Id. 15; *Kelsey v. Chamberlain,* 47 Id. 241; *Brewster v. Potruff,* 55 Id. 129.

3. The words "board measure" imply lumber, as it is the only article thus measured, and *lumber* is merchantable sawed boards, scantling, plank, or timber, and not mill culls, slabs, edgings, and the like. In speaking of commodities for sale generally, it is the universally recognized rule that *merchantable* commodities are intended; citing *Whitmore v. Iron Co.,* 2 Allen, 52, 58; *Swett v. Shumway,* 102 Mass. 365; *Gallagher v. Waring,* 9 Wend. 20, 28; *Hart v. Wright,* 17 Id. 267; *Howard v. Hoey,* 23 Id. 350, 351, 352; *Hargous v. Stone,* 5 N. Y. 73; *Reed v. Randall,* 29 Id. 358, 362; *Brown v. Sayles,* 27 Vt. 227; *Perkins v. Hoyt,* 35 Mich. 506.

4. The court is the tribunal to pass upon the sufficiency of the evidence to establish a custom; citing *Pevey v. Lumber Co.*, 33 Minn. 45; *Wootters v. Kauffman*, 67 Tex. 488; *Ledyard v. Hibbard*, 48 Mich. 421; *Adams v. Ins. Co.*, 76 Penn. St. 411.

5. The office of a usage, when thus proved and applied to a contract, is to give a particular effect and meaning to the words of a contract; citing *Randall v. Smith*, 63 Me. 105, 106; but where the terms are clear and explicit, no customs of the country can vary them; citing *Harvey v. Cady*, 3 Mich. 431; *Greenstine v. Burchard*, 50 Id. 434.

3. To be valid, a local usage must be certain, definite, uniform, notorious, and clearly proved, and the contract must be shown to have been made with reference to such usage; citing *Ledyard v. Hibbard*, 48 Mich. 421, 427; *McMasters v. Railroad Co.*, 69 Penn. St. 374; *Potts v. Aechternacht*, 93 Id. 138; *Isham v. Fox*, 7 Ohio St. 317; *Harper v. Pound*, 10 Ind. 32; *Bissell v. Ryan*, 23 Ill. 566; *Leggat v. Brewing Co.*, 60 Id. 158; *Hinton v. Coleman*, 45 Wis. 165; *Smith v. Gibbs*, 44 N. H. 335; *Walls v. Bailey*, 49 N. Y. 464; *Harris v. Tumbridge*, 83 Id. 92; *Stevens v. Reeves*, 9 Pick. 197; *Janney v. Boyd*, 30 Minn. 319; *Taylor v. Mueller*, Id. 343; *Pevey v. Lumber Co.*, 33 Id. 45, 47; *Porter v. Hills*, 114 Mass. 106, 110.

*M. Brown ( W. E. Ambler* and *E. F. Uhl*, of counsel), for plaintiff, contended :

1. That parol evidence was admissible to show the meaning of the term " mill tally," because its meaning is doubtful; citing *Ins. Co. v. De Graff*, 12 Mich. 124; *Jones v. Anderson*, 2 Sou. Rep. 911; *Beason v. Kurz*, 29 N. W. Rep. 230; *Myers v. Tibbals*, 13 Pac. Rep. 695; *Jaqua v. Witham*, 7 N. E. Rep. 314 ; 2 Whart. Ev. §§ 954, 962; *Bissel v. Campbell*, 54 N. Y. 353; *Miller v. Stevens*, 100 Mass. 518; *Page v. Cole*, 120 Id. 37; *Keller v. Webb*, 125 Id. 89.

CAMPBELL, J.   Plaintiff sued defendant to recover the compensation agreed to be paid him for cutting and delivering logs under a written contract originally made by defendant with plaintiff and his partner, Angus Mackintosh.   By this agreement Corneil and Mackintosh agreed, under certain restrictions and regulations not necessary to be described, to cut and deliver at the mill named, in board and strip logs, the timber on certain

lands described.    The work was to be paid for on terms the meaning of which is disputed.    The provision was as follows :

" At the rate of three dollars and seventy-five cents per thousand feet, board measure, according to the mill tally thereof."

The jury found a verdict for an unpaid balance of $9,637.57, of which plaintiff remitted $448.14 for rent of railroad iron during a period which he had claimed he was delayed.    By the findings of the jury plaintiff recovered for the logs at the price he claimed, and for a small bill not disputed.    The credits allowed defendant included all admitted sums, and apparently a trifle more. We do not think it appears from the record as admitted that any more should have been allowed.    There is a little confusion in some figuring near the end of the bill of exceptions, but it appears distinctly that the claims of the two parties on which they went to the jury left nothing admitted that has not been allowed.

The issue thus narrowed down was very fairly presented by the charge, and we can see no reason to think it was not considered properly by the jury.    And we have found nothing in the very prolix record laid before us which requires attention except the question of compensation.    We are at a loss to imagine any reason why this enormous volume should not have been cut down to moderate limits.    It contains a mass of repetitions and useless rubbish that could never have served any good purpose, and that has no proper place in a bill of exceptions.    It is rather remarkable that with so much irrelevant matter there was not more that was prejudicial. But we are satisfied the jury was not misled.

The dispute which is really important relates to what is included within the meaning of the term "mill tally."

The defendant claimed that it included only the classes of lumber generally called "merchantable," excluding a cheaper kind known as "mill culls."

If the term is one not having a settled judicial meaning, it cannot be said that the contract makes it any plainer. It is not unusual to calculate the lumber value of logs by scaling them before sawing. That is a process which involves more or less skill and sagacity, and is not purely mechanical. Some scale more closely than others, but it would be very uncommon for any one to make his log scale correspond exactly with the result in sawed lumber. There is frequently a difference caused by modes of sawing, and the care and skill of the mill work.

In the present case the parties saw fit to have the logs measured by their actual product, and the question is whether the mill tally covers the whole or only certain qualities of that product.

In the absence of any other light, it would seem more natural to make the mill tally include all that is tallied as lumber than any less. But the fact that a dispute arose about it, and the circuit judge did not consider himself judicially informed upon the subject, suggests that there must be some practical construction that should be followed. It is perfectly well known that there are times and places that lead to different usages in economizing lumber. The old processes were more wasteful than the new. What was once not worth saving is now frequently of commercial value. Grades are multiplied and subdivided, and sawing is closer.

Under these circumstances, we can see no objection to receiving such testimony as was offered here. Those witnesses whom the jury followed testified that the mill tally included all that was saved and set apart as proper to be

classed as lumber, and that mill culls were so included. That testimony is in harmony with the apparent meaning. The word naturally refers to what is usually tallied, and that is what these witnesses say it is understood to mean. The members of this Court have no judicial or other knowledge to the contrary. Neither have we judicial knowledge that the phrase has not a possible occasion for interpretation. It is not safe for courts to assume to know everything about the usages of all kinds of business. And even in those cases where they are understood to have judicial knowledge their supposed possession of it is often very much refreshed by inquiry.

In our view the conclusion of the jury was warranted by the testimony, and the testimony was properly regarded.

We do not think there is any other question in the case which we can regard as improperly disposed of. The jury had careful and correct instruction on the disputed points, and their verdict is final. We think they had enough before them to pass upon.

The judgment must be affirmed.

The other Justices concurred.