Decided 9 January, 1905.

**BARNES** v. **LEIDIGH.**

79 Pac. 51.

CONTRACTS—PERFORMANCE BY INSTALLMENTS*—ACCRUAL OF ACTION.

1. In the case of a contract of sale to be performed by installments, the vendor may sue for any proportionate payment whenever it is due without showing a full performance of the contract.

As an example: Where a sawmill owner contracted to sell and deliver the entire output of his mill for a certain period, the delivery, acceptance and payments to be made monthly, the vendor may sue for any installment whenever it is overdue, without reference to the balance of the contract. He need not plead or prove compliance with that part of the contract subsequently to be performed.

EVIDENCE OF MEANING OF PARTICULAR TERMS.

2. In an action on a contract to purchase a quantity of lumber at a specified price for "merchantable lumber, mill run," it is competent to show by oral testimony the meaning of those words in the lumber business in that vicinity, they being unusual words without settled judicial meaning.

REFUSING INSTRUCTIONS ALREADY GIVEN.

3. Instructions proposed by counsel may properly be refused when they have already been practically given in the language of the judge.

From Union: ROBERT EAKIN, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by J. H. and D. Barnes against John H. Leidigh and another to recover $349.07 for lumber sold and

---

*NOTE.—As to the right of one party to abandon or rescind a contract because of the default of the other party, see *Lake Shore & M. S. Ry. Co.* v. *Richards,* 30 L. R. A. 33, with note, and *Ross Meehan F. Co.* v. *Royer Wheel Co.,* 68 L. R. A. 829.        REPORTER.

delivered. In February, 1903, the plaintiffs and defendants made a contract in writing as follows:

"That the said J. H. Barnes & Son have this day sold to the Lake Superior Lumber Company their entire mill cut for the year 1903—mill located near Elgin, Oregon; the lumber to be delivered and unloaded from wagons at proper piles in the yards of the Lake Superior Lumber Company at Elgin, Oregon, for which the Lake Superior Lumber Company agrees to pay $9.25 per M for merchantable lumber—mill run. The said J. H. Barnes & Son have sold to the Lake Superior Lumber Company their entire cut of lath and moulding strips at the following prices: Lath, $2.50 per M; 1 inch and 1½ inch moulding strips at 25c per 100 lineal feet; 2 and 2½ inch at 35c; and 3 and 3½ inch at 45c; payments to be made as follows: All lumber delivered during the month to be paid for the 10th of the following month.

"The said J. H. Barnes & Son agrees to sort and furnish from the common at the mill and give the Lake Superior Lumber Company the use of their lumber yard for a rental of $50 per year.

"The said J. H. Barnes & Son agrees to cut lumber of such dimensions as ordered by the Lake Superior Lumber Company."

The complaint alleges that defendants paid for all lumber and material delivered under the contract from the 11th of February to the 31st of July, but that there is a balance of $349.07 due and unpaid for lumber delivered during the month of August. The answer admits the contract as alleged, but avers that, at the time of its execution, defendants were engaged in buying and shipping lumber principally upon orders; that plaintiffs were so informed, and knew that they were to cut and deliver no lumber except such as would be suitable for the purpose stated, and of sizes and dimensions to be ordered by the defendants; that defendants furnished plaintiffs cutting orders, in pursuance of which they delivered lumber to the amount and value of $8,208.25, for which they have been paid in full, but that, in violation of their contract, they delivered 37,845 feet of defective and unmerchantable lumber, for which they charged defendants the contract price, amounting to $349.07; and that plaintiffs did not furnish to defendants the entire output of their mill, but sold and delivered 5,000 feet of merchantable lumber to other parties, to defendants' damage in the sum of $15. The reply denies the

allegations of the answer, and affirmatively pleads that defendants are estopped to claim that any lumber delivered prior to August, 1903, was not of the quality called for by the contract, because it received, accepted, and paid for the same with full knowledge of the facts.   Plaintiffs had a verdict and judgment, and defendants appeal.                              AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Charles H. Finn.*

For respondents there was a brief over the name of *Crawford & Crawford,* with an oral orgument by *Mr. Thomas H. Crawford.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The first three assignments of error challenge the sufficiency of the complaint on the ground that the contract sued on is entire, and not severable, and therefore no recovery can be had without allegation and proof of full performance.   The contract provides for the sale by the plaintiffs to the defendants of the entire mill cut of the former for the year 1903, but it is stipulated that all lumber delivered during one month shall be paid for on the 10th of the following month.   Delivery, acceptance, and payment were therefore to take place by installments extending through the season, and in such case a vendor may maintain an action to recover for any installment when it becomes due, without pleading or proving full performance on his part: Clark, Contracts, § 275, p. 657; *Tenny* v. *Mulvaney,* 8 Or. 129; *Coos Bay R. Co.* v. *Nosler,* 30 Or. 547 (48 Pac. 361) ; *Coos Bay R. Co.* v. *Dixon,* 30 Or. 584 (48 Pac. 360) ; *Oliver* v. *Oregon Sugar Co.* 42 Or. 276 (70 Pac. 902).

2. The fourth, fifth, eighth, and ninth alleged errors relate to the admission of testimony to show the meaning of the words "merchantable lumber, mill run," used in the contract, and the character of lumber properly included therein.   The argument seems to be that by the contract the plaintiffs were to furnish the defendants, "as jobbers and shippers to a foreign market," their mill cut for the season of 1903, to be "manufactured upon cutting orders of the defendants and for the express purposes of their trade"; and therefore it was error to admit evidence

to show what would be "merchantable lumber, mill run," according to the local meaning of these words as understood in the business. The contract does not provide that the lumber is to be furnished defendants "as jobbers and shippers to a foreign market,"·nor that it shall be suitable for their trade, but simply that it shall be "merchantable lumber, mill run." It is true, there is an allegation in the answer that plaintiffs knew at the time the contract was made that the lumber was intended for a special purpose, and made the contract with reference thereto. This averment is denied by the plaintiffs. It was competent, therefore, from their standpoint, to show the meaning of the terms "merchantable lumber, mill run," as used in the vicinity where the contract was made. These words are.not in common use, and have no settled judicial meaning. They are peculiar to the lumber trade or business, and, as the evidence tended to show, have a special meaning, and are well understood by persons engaged in such business. The testimony was therefore important and necessary, in order to enable the court to construe the contract, and the jury to render a proper verdict: 2 Wharton, Evidence (2 ed.), § 962; *Corneil* v. *New Era Lum. Co.* 71 Mich. 350 (39 N. W. 7); *Jones* v. *Anderson,* 82 Ala. 302 (2 South. 911).*

3. The sixth and seventh points refer to the refusal of the court to give certain instructions requested. The first is that, if the plaintiffs knew at the time the contract was made that the lumber to be furnished by them was intended for a certain purpose, it must have been suitable for such purpose, to be merchantable under the contract, and that, before the monthly settlement between the parties would be binding on the defendants as an acceptance of the lumber previously delivered, it must appear that such settlements were made with full knowledge of the facts. Both of these instructions were given by the court in practically the same language as requested, and we are unable to understand why their refusal should be assigned as error.

The remaining assignments of error were to the giving of certain instructions by the trial court. No objections to any of

*NOTE.—See annotations to 52 Am. St. Rep. 521, 65 Am. St. Rep. 572, and 6 L. R. A. 42.                    REPORTER.

these instructions are suggested in the brief, and, from a reading of them, we are not able to discover any.   Judgment affirmed.

<div align="right">Affirmed.</div>

<div align="center">

Decided 16 January, 1905.