*[274]
 
 CARLISLE B. ROBERTS, Judge.
 

 Ellingson Lumber Company, an Oregon corporation, appealed from the defendant’s Order No. VL 79-79, dated February 9, 1979, requiring the payment of the forest products harvest tax (ORS 321.005 to 321.225, 1975 Replacement Part) on its harvest of "cull logs,” acquired from the U. S. Forest Service dining the last taxable quarter of 1974, all of 1975 and the first quarter of 1976.
 
 {See
 
 ORS 321.045.) The chief ground for appeal is that the cull logs taxed by the defendant were not merchantable and therefore not subject to the forest products harvest tax.
 

 ORS 321.025(1) provides:
 

 "Except as otherwise provided in ORS 321.037 [a provision not relevant here], the rate of the tax levied by subsection (1) of ORS 321.015 is five cents per thousand feet, board measure, on all
 
 merchantable forest products harvested
 
 on merchantable forest lands.” (Emphasis supplied.)
 

 ORS 321.015 denominates the tax as a "privilege tax upon taxpayers on the harvesting of all
 
 merchantable
 
 forest products.” (Emphasis supplied.) "Merchantability” is a factor throughout the act. Subsection (3) provides that the tax shall be measured by and be applicable to each "per thousand feet, board measure, on the total quantity of forest products harvested * * * designed to measure total volume of
 
 merchantable
 
 forest products in board feet.” (Emphasis supplied.) The subsection ends with a provision which is applicable in this suit:
 

 "* * * In the case of salvage operations, where the log scale used does not reflect the total volume of
 
 merchantable
 
 forest products in board feet, the taxpayer may make a percentage deduction to determine such volume which is reasonable for the area from which the forest products were harvested; the deduction shall be subject to the approval of the department.” (Emphasis supplied.)
 

 
 *[275]
 
 The word "merchantable” is not defined in the statute. The defendant, in its order, accepted the definition found in Black’s Law Dictionary 1139 (4th ed 1951): "Salable and fit for the market.” The plaintiff has not disputed this definition and it is adopted by the court for the purposes of this suit.
 
 [1]
 

 The word "cull” is not found in the pertinent statute.
 
 [2]
 
 The undisputed testimony of plaintiff’s expert witnesses was that the U. S. Forest Service is not authorized to give away anything of value from the forest reserves, but it does, ordinarily, give away "cull logs.” Plaintiff has relied on this fact for its conclusion that the logs had no value. In the USDA Forest Service Timber Sale Contract, Division B, "Standard Provisions for Scaled Timber Sales” (July 1970), B2.12 (PI Ex 2, at 12) it describes a "live cull tree” as
 

 "* * * a live tree which meets d.b.h. specifications of A2 but does not have at least the number of product units listed in A2 in the lower two-thirds of bole length from stump to the top diameter which was used in the sale volume estimate.”
 

 Relying on this definition, the plaintiff’s expert witnesses described a "cull log” as a log that "is less than one-third sound.” A merchantable log, "by definition, is one-third sound or better.”
 

 The testimony shows that, generally speaking, a cull log is never brought into the yard of the lumber mill intentionally. (It costs as much to haul a cull log as a sound log.) However, in contracts for cutting
 
 *[276]
 
 "young sales” (thinning), the forest service requires the removal of culls; a salvage operation will involve the removal of cull logs; and, in many instances, a log originally deemed merchantable is found, on further inspection in the mill yard, to be a cull. While the forest service does not make a charge for culls per se, it may let out a salvage cutting contract which involves many of them, among merchantable stumpage, and charge a lesser amount per thousand board feet with this factor in mind. (The only time during the period here considered in which the plaintiff could be said to have paid for cull logs was under one such contract.)
 

 During the calendar quarters involved in this suit, the plaintiff acquired 6.5 million board feet of what was found to be cull logs. According to the testimony, at this time, there was a failure in the supply of wood pulp, causing paper makers to buy any forest product from which chips could be produced for use in paper making. The plaintiff utilized this opportunity for ridding itself of as much salable material as could be produced from the defective logs on hand. It was able to sell and ship 1.3 million board feet of logs at $70.71 per thousand board feet. It was thus able to reimburse its direct handling charges of $67.22 per thousand board feet, leaving $3.49 for other expenses or profit. Another 2.2 million board feet were run through the chippers at plaintiffs mill, but it was found that this was at a definite loss ("a disaster”). The remaining 3 million board feet were given away to local people seeking fire wood or were burned in the yard.
 

 The court accepts the testimony that the cull logs were obtained gratis. The costs involved were logging, loading, hauling, inspecting and decking. The overall loss on the 6.5 million board feet is calculated at $200,000. In consequence, on the ground that the material was not merchantable, the plaintiff did not report or pay forest products harvest taxes upon the 6.5 million board feet of logs. The transactions described above were discovered when the department’s
 
 *[277]
 
 agent examined plaintiff’s books, as a part of the department’s administration of the forest products harvest tax.
 

 ORS 321.045 requires that the taxes levied under ORS 321.015 shall be due and payable in quarterly installments, on or before the last day of October, January, April and July, for the preceding calendar quarter. On or before the last day of October, January, April and July, each taxpayer is required to make out a return on a form prescribed by the department, showing the amount of tax for which it is liable for the preceding calendar quarter and supplying other information the department considers necessary to correctly determine the tax due, and to mail the return, together with a remittance of the amount of tax, to the department. The levy is upon the "harvesting” which is defined in ORS 321.005(9) to mean:
 

 "* * * the cutting, severing or otherwise removing of merchantable forest products from forest lands.”
 

 Consequently, the court holds that, typically, the gross
 
 [3]
 
 board feet should be determined as of the time the taxpayer takes control of the forest product by exercising its contractual right to sever or to remove the product. The application of the tax is upon the measure of the product
 
 in situ.
 

 The imposition of the tax has nothing to do with whether the harvester subsequently enjoys a profit or suffers a loss upon conversion or sale of the forest product. But it must be observed that the tax, as imposed by ORS 321.025, is only upon "merchantable forest products.” Since "merchantable” is equated with "salable,” the tax can be imposed only upon that forest product which, even with some defects, is reasonably capable of being sold by the purchaser (although possibly in a different form).
 

 
 *[278]
 
 The determination of merchantability will be made by the taxpayer at the time of harvesting. However, the system of quarterly reports gives the taxpayer time and opportunity to exercise hindsight with respect to the value of the forest product in
 
 salvage
 
 operations.
 
 See
 
 ORS 321.015(3) (last sentence). (The testimony indicates that the plaintiffs operations for the U. S. Forest Service which resulted in the harvest of the subject cull logs come within the department’s rule, OAR 150-321.015(3).)
 

 Because of its determination that the cull logs were not merchantable, plaintiff never filed reports nor paid tax pursuant to ORS 321.045. Nevertheless, plaintiff’s voluntary actions prove that, at a particular phase of the market, it believed that portions of the cull logs could be utilized for profit.
 

 Plaintiff now should determine the percentages of the salable and unsalable portions of the 1.3 million board feet of logs sold and of the 2.2 million board feet of the logs chipped, as above described, following the directions given in the last sentence of ORS 321.015(3). Now, therefore,
 

 IT IS ORDERED that plaintiff, on or before 30 days from the receipt of this Decision and Interlocutory Order, shall file with this court forms of returns (with true copies to the defendant) for the quarters here in question, utilizing the forms required by ORS 321.045 and applying the provisions of ORS 321.005 et seq. and the rulings of the court as set out herein; and
 

 IT IS FURTHER ORDERED that the court shall retain jurisdiction of this cause until opportunity has been afforded to the parties herein, if requested by either of them or required by the court, to advise the court as to any objections found respecting the required returns as filed, after which the court’s decree will be entered.
 

 [1]
 

 In the cases of
 
 Barnes v. Leidigh,
 
 46 Or 43, 79 P 51 (1905), and
 
 T. and McK. v. M. and B.,
 
 9 Or 405 (1881), the Supreme Court indicated that the words "merchantable” and "marketable” are practically synonymous, as applied to property sold by quality and description.
 

 [2]
 

 10A Words and Phrases (perm ed), under the title "cull,” gives only two definitions of the word: A "cull,” in the lumber business, is a board full of holes or knots, and not considered merchantable.
 
 Sloan v. Allegheny Co.,
 
 91 Md 501, 502, 46 A 1003, 1004 (1900). The word "cull,” as used in a tie contract, meant ties that did not conform to the specifications.
 
 Chapman v. Kansas City, C. & S. Ry. Co.,
 
 146 Mo 481, 490, 48 SW 646, 652 (1898).
 

 [3]
 

 "Gross board feet” is the measure to be used when merchantable timber is severed, converting stumpage to logs. It is distinguished from net footage, providing for deductions on account of rot and other defect. Falk,
 
 Timber and Forest Products Law
 
 (1958: Howell-North, Berkeley, CA), § 184.