GILBERT & SECOR *v.* UNITED STATES.

1. An act of Congress directing the Secretary of the Navy to enter into a contract with certain parties, provided it could be done on terms previously offered by the parties, does not, of itself, create a contract.
2. If such parties afterwards sign a written agreement with the secretary, on terms less favorable to them than the act of Congress authorized the secretary to make, they must abide by their action in accepting the less favorable terms.

APPEAL from the Court of Claims; the case being this:

By an act of March 3d, 1847, making appropriations for the naval service, certain sums were set apart for floating drydocks at Philadelphia, at Pensacola, and at Kittery, which the Secretary of the Navy was directed to have built.

Proposals were received for these docks from several persons, and among them from Gilbert & Secor, who offered to build the dock at Kittery for $732,905. The proposals were made on a basis that the docks should have what is known "as tar and felt sheathing." If the sheathing known as "copper sheathing" was required, the offer was to do the work for an additional sum of $72,742.

Upon an examination of the proposals, and on full consideration of the plans proposed, it was found that the appropriation made by Congress in the act just mentioned, was insufficient to pay for the work on the plan approved by the secretary. Thereupon, under the advice of the Attorney-General, the secretary *declined to make any contracts.*

At the next session, Congress having considered the matter, passed another act,* in which the secretary was di-

---

* Act of 3d August, 1848.

rected, *in the execution of the act already mentioned*, to enter into a contract with Dakin & Moody for the construction of a *sectional* floating dry-dock, basin, and railways at Philadelphia, and with Gilbert & Secor, for the construction of a *balance* floating dry-dock, basin, and railways at Pensacola, and with one or the other of the parties for the construction of a floating dry-dock, basin, and railways upon either of those plans that the secretary might prefer for the navy yard at Kittery; provided that such contracts could be made at prices that should not exceed by ten per cent. the prices which had been submitted by either of said parties. It was also provided that the secretary should, in contracting with said parties, enlarge the dimensions of said works at each yard to a capacity sufficient for docking war steamers of the largest class.

Under the powers conferred by this statute, the Secretary of the Navy contracted with Dakin & Moody, for the dock at Philadelphia, and with Gilbert & Secor, for the work at Pensacola.

In determining which of the proposed plans (both of which it seems were patented) he would select for *Kittery*, he seems to have considered whether he could get the dock at that place copper-sheathed without any additional cost. It is recited in the contract, signed by him and the plaintiffs, for the work at that place, that "the Secretary of the Navy, in the execution of the aforesaid law, after mature deliberation thereon, and *in consideration that the said parties of the second part will copper-fasten said dock at Kittery*, according to the specifications for the Pensacola dock hereto annexed, has determined to select, and does hereby select, the balance dock, basin, and railways of Gilbert & Secor, parties of the second part, as best adapted for the navy yard at Kittery." A contract, with the recital just mentioned, and a provision that the dock should be copper-sheathed, was accordingly concluded. The work was to be done according to minute specifications, for the sum originally proposed, on the assumption that *felt and tar sheathing* would be used. When executing this contract, Gilbert & Secor had protested against

that provision. The contract also provided for the enlargement necessary for war steamers, and for the increase of the *price of the work by ten per cent.*

The whole work being completed, the price named in the *contract,* $732,905 was paid to Gilbert & Secor. They, however, contended that this sum was the sum named on an assumption that tar and felt sheathing, and not copper, would be used, and they accordingly asked for the $72,742 additional. The government declining to pay it, Gilbert & Secor then brought suit in the Court of Claims. That court dismissed their petition, and they took the present appeal.

*Messrs. Carlisle and McPherson for them, appellants here,* contended that the proposals were made under the first act of Congress, that it was in *execution of that act,* and of the proposals under *it,* that all which was subsequently done was done; and that what was thus subsequently done amounted to an acceptance of their proposals. No new proposals, it is certain, had been made. Under what else then than the old ones, could anything be done by the government? ·

The second act was passed only because the first one did not make an appropriation sufficient to meet the proposals, and was, in fact, an acceptance of them; the secretary only being required to complete the matter in form.

*Mr. Norton, contra:*

Mr. Justice MILLER delivered the opinion of the court.

The present claim for $72,742.82 is the difference in value between felt and tar sheathing, and copper sheathing, the latter of which, by their contract, Gilbert & Secor, the claimants, were required to put on the dock, and did put on it.

The claimants do not make any question that by the terms of the agreement signed by them, and by the Secretary of the Navy, they were bound to copper sheath the dock, and that this was included in the work which they agreed to do, for the aggregate sum already mentioned. Nor do they contend that there was any mistake in reference to that par-

ticular, for they protested against that provision of the contract while they signed it.

But the proposition on which their claim is based seems, when fairly stated, to be this: That the act of Congress under which the secretary acted when he made the contract with them, was itself an acceptance of certain proposals made by plaintiffs, and, therefore, taken in connection with those proposals, constituted a contract binding on the government, and that under that contract the dock was built. That those proposals were framed on the basis of allowing the sum now claimed for copper sheathing if copper was used.

But it seems to us that the statement of the case sufficiently negatives the idea that the act of Congress completed a contract.

When did the claimants become bound to build such a work as that specified in their final contract? That work was much larger than the one for which they made proposals. When did they consent to the enlargement? Their proposals of the year previous had been rejected by the secretary. When did they renew them? The proposition which Congress authorized the secretary to accept was ten per cent. larger than any proposal they had made. Did Congress mean to say, we accept your proposal, and give you ten per cent. more than you have asked? Or did it mean to authorize the secretary to make the best terms he could, not exceeding that limit? Clearly it must have intended the latter.

It also appears from the agreement signed, and therefore accepted by the claimants, that the secretary was induced to exercise the option which the act gave him in regard to the two kinds of work, in favor of that of claimants, in consideration that they would copper-fasten the dock without additional charge. Having thus induced the secretary to decide in their favor, they are not at liberty to repudiate this part of their contract.

If these transactions are to be construed by the rules which govern agreements between private individuals, there does not appear to be any reason to infer a contract prior to the

written agreement between the parties; nor any reason why that agreement should not govern the rights of the parties.

JUDGMENT AFFIRMED.