H. O. TENNY ET AL., RESPONDENTS, *v.* N. E. MULVANEY ET AL., APPELLANTS.

SEVERABLE CONTRACT.—T. contracted to cut and deliver at the mill of M. one million feet of merchantable logs within the year, at four dollars and twenty-five cents per thousand feet, to be scaled and received as each one hundred thousand feet were placed in a certain creek. *Held*, that the contract was severable and not entire.

APPEAL from Douglas County. The facts are stated in the opinion.

*W. R. Willis*, for appellant:

The contract in this case is entire, to furnish one million feet of logs in one year, and keep logs on hand, etc., at the rate of four dollars and twenty-five cents per thousand feet, and payment was to be made on its fulfillment, and not on the delivery of each one thousand feet, as stated in the charge to the jury by the circuit court. (*Shinn* v. *Bodine*, 60 Penn. 182–185; *Coburn* v. *City of Hartford*, 38 Conn. 290; *Isaacs* v. *McAndrew*, 1 Mon. T. 437, 450, 451; Cow. Tr. secs. 271, 272; *Averill* v. *The Hartford*, 2 Cal. 310; *McMillen* v. *Vandyke*, 12 Johns. 165; *Clark* v. *Baker*, 5 Met. 452.)

This contract fixes the quality of logs to be furnished, and it was error and calculated to mislead the jury to admit evidence of the character of the timber in the vicinity of the

defendants' mill, and what quality of logs witness (Comstock) would expect to receive, etc., also that the logs delivered were average logs on Pass creek. By the terms of this agreement the plaintiffs were required to deliver good, sound, merchantable logs, at defendants boom, unincumbered with rotten and unmerchantable logs, and defendants were not required to be at great or any expense or trouble in selecting or separating them, nor to have the boom obstructed by such bad logs, and the court erred in refusing the instruction asked to be given by defendants and in giving the instructions he did on that subject.

Good, sound, merchantable logs in one place are good, sound, merchantable logs in any other place, and it does not depend upon the character of the timber in the vicinity. The evidence shows that there was plenty of good, sound, merchantable logs in the timber furnished by defendants, if plaintiffs had picked them out; also, that out of three hundred and four thousand eight hundred and twenty-four feet of logs put in the water, there was but one hundred and thirty-seven thousand and fifty-four feet of good, sound logs; also, that defendants offered to receive and pay for all that was good, but refused to select them out from the bad in the water.

It was no breach of the conditions of this agreement on the part of defendants to receive the logs, until they were separated from the bad; and no default in payment, for there was nothing due until the end of the year, and one million feet of logs had been delivered.

*John Kelsay, and Herman & Ball,* for respondents:

It is provided in the contract that the defendants shall pay the plaintiffs four dollars and twenty-five cents per thousand feet for good, sound, merchantable logs delivered at the boom. When the kind of logs mentioned in the contract were delivered in the boom the defendants were undoubtedly liable. The plaintiffs did not agree that there should be no rotten logs with the good ones. (30 Cal. 449, 450; Chitty on Contracts, 113; 3 Graham & Wat. on New Trials, 710.) The instruction refused by the court was

substantially given in the charge of the court. (47 Cal. 95, 96.)

The court did not err in its charge to the jury, in which it is stated that "the defendants were not to receive or scale or pay for any logs which were not good, sound, or merchantable, but the fact that plaintiffs may have put into floating water some logs that were not good or sound or merchantable, if such shall be found by you from the evidence to be the fact, did not excuse the defendants from their agreement to receive and pay for those that were good, sound, and merchantable. (1 Chitty on Contracts, 113.) There is no exception in the contract or reservation that would interfere with or render erroneous this charge. (Id. 137, note d.)

The court did not err in its charge in relation to the general quality of the timber, etc. The construction of the contract was for the court, being a question of law. (2 Parsons on Contracts, 492; Civ. Code, 248, sec. 686; 1 Chitty on Contracts, 117, note y, 103.)

The court charged the jury as to the construction of the contract that "the purchase price of all logs delivered under the contract at the boom, due," etc. (35 Cal. 241; 2 Chitty on Contracts, 1084; 2 Parsons on Contracts, 551, 552; Id. 499–521; 3 Wend. 363; 1 Chitty on Pleadings, 322; 1 Chitty on Contracts, 117, note p, 113–126.)

In ordinary cases, if the court see that notwithstanding a misdirection, a new trial ought to produce the same result, a new trial will not be granted. (1 Graham & Wat. on New Trials, 208, 270, 301; 3 Id. 717; 13 Cal. 429; 22 Id. 50; 18 Id. 377.)

By the Court, PRIM, J.:

This is an action to recover damages on a breach of contract based upon the following facts as alleged in the complaint: That about the twenty-ninth of May, 1878, the respondents and appellants entered into an agreement by which the respondents promised to furnish the appellants at their boom in Pass creek, in Douglas county, good, sound, merchantable logs for four dollars and twenty-five

cents per thousand feet. The appellants agreed to scale and
pay for each one hundred thousand feet of said logs when
placed in floating water in the creek above the boom; that
the respondents delivered before the commencement of this
action, in the boom, one hundred and sixty-five thousand one
hundred and sixty-nine feet of good, sound, merchantable
logs, and that they delivered in said floating water above
the boom, one hundred and thirty-nine thousand six hundred
and fifty-four feet of good, merchantable logs; that appel-
lants became liable for the logs in the sum of one thousand
two hundred eighty-five dollars and fifty-nine cents, on
which has been paid one hundred and thirty-five dollars,
and no more; that there is due one thousand one hundred
and fifty dollars; and for a separate cause of action, it is al-
leged that by the terms of the agreement, the appellants
were to furnish the standing timber within one mile of the
creek above the boom, and to scale and pay respondents
for each one hundred thousand feet of said logs, when
placed in the floating water of the creek. Respondents
were to deliver to appellants at the boom, one million feet
of good, sound, merchantable logs, with the privilege of
furnishing as much more as they could put in the creek in
one year.

It is alleged that respondents proceeded under the con-
tract, and had cut a large amount of logs, and were pro-
ceeding to complete the contract, when the appellants,
about the fourteenth of August, 1878, broke the contract
and refused to receive or pay for the logs; that the re-
spondents could and would have delivered within the year
one million five hundred thousand feet of good, sound,
merchantable logs but for the breach; that respondents
have been damaged on account of said breach three thou-
sand dollars, in addition to the amount claimed in the fore-
going cause of action.

The appellants, for answer to the complaint, deny that the
respondents agreed to furnish good, sound, merchantable
logs for four dollars and twenty-five cents per thousand
feet; but allege they were to furnish at the mill in one
year, from the twenty-ninth of May, 1878, one million feet

of good, sound, merchantable logs, and keep logs on hand so the mill should not be shut down for want of logs, at four dollars and twenty-five cents per thousand feet, with the privilege of putting more than one million feet in the boom, at the same price, if they could do so within the year; deny that they agreed to pay for each one hundred thousand feet, or any part thereof, until the contract was completed; deny that the respondents delivered one hundred and sixty-five thousand one hundred and sixty-nine feet of merchantable logs, or more than thirty-five thousand feet, or that they delivered in the floating water one hundred and thirty-nine thousand six hundred and fifty-four feet, or any more than ninety-five thousand feet; deny that they became indebted for said logs in the sum of one thousand two hundred and eighty-five dollars and forty-nine cents, or any sum; deny that there is due one thousand one hundred and fifty-four dollars, or any part thereof, or that they were to pay for each one hundred thousand feet placed in the floating water, or any part thereof, until the end of the year.

The agreement in question is as follows: "This article of agreement, made and entered into this the twenty-ninth day of May, 1878, between N. E. Mulvaney and E. C. Bemis of the firm name of Mulvaney & Bemis, parties of the first part, and H. O. Tenny and Neil McKenzie of the firm name of Tenny & McKenzie, parties of the second part. Parties of the first part agree to pay parties of the second part four dollars and twenty-five cents ($4.25) per thousand (1,000) feet for good, sound, merchantable logs, delivered at the boom in Pass creek; also, agree to furnish timber for logs, not to exceed a mile from the bank of the creek; to scale each one hundred thousand (100,000) feet that is in floating water.

"The parties of the second part agree to furnish logs to the parties of the first part one million (1,000,000) feet, with privilege of furnishing as much more as can be put in the creek in the year, from this date, at the boom in Pass creek; the parties of the second part shall keep logs on hand for the parties of the first part, so that the mill shall not be shut down during the year, and are to cut four hundred

thousand (400,000) feet, more or less, from Richey canyon."

It is alleged that the respondents failed and refused to comply with said agreement; that they put into the boom and floating water a large amount of unsound and unmerchantable logs, and prevented appellants from getting logs to keep their mill running; that their mill was for a long time shut down by reason of respondents' failure to perform the conditions of said agreement on their part, to appellants' damage in the sum of four thousand dollars.

The first ground of error complained of by appellants was the admission of certain testimony on behalf of the respondents to show the general character of the timber on Pass creek and in the vicinity of the appellants' mill, and to show that the logs furnished by respondents were average logs from said timber.

The bill of exceptions shows that respondents called J. J. Comstock and asked him this question: "What is the character of the timber near defendants' mill?" The question was objected to, and the witness answered: "The timber on Pass creek, where defendants' mill is situated, is a great deal of it bad and punky, some of it rotten, some knotty, and some not; if I sent a man to cut logs I would expect to take what was on the ground; I have owned and run a saw-mill on Pass creek for several years."

Wm. Rosee was called and asked to state if the logs furnished by the plaintiffs were an average of the logs on Pass creek. Defendants' counsel objected. The witness testified that the logs furnished were average logs on the creek.

It will be seen by the terms of the contract that appellants were to furnish the standing timber from which these logs were to be cut, none of which was to be located further than one mile from the bank of the creek. As the logs were to be selected and cut from the timber in a particular locality, we are of the opinion that the admission of the evidence was proper. Witness Comstock was probably allowed to go a little too far in stating what he would expect to do if he put a man out to cut logs; but it appears that

the jury were instructed by the court that he "admitted this evidence merely to assist them in determining whether the logs in dispute were merchantable at the place where they were delivered—that saw-logs which are merchantable in one locality may not be merchantable at another."

The second and third assignments of error will be considered together.

The second is that the court erroneously refused to charge the jury as requested by appellants. The third is that the court erroneously charged upon the point requested. The court was asked by the appellant to charge: "That in this case the plaintiffs can not perform their agreement by delivering in the boom at the defendants' mill good, sound, merchantable logs, mixed promiscuously with a large portion of rotten, unmerchantable logs, and require the defendants to select the good, sound, merchantable logs."

This instruction was refused, but instead thereof, the court charged the jury: "That the defendants were not bound to receive or scale or pay for any logs which were not good, sound, or merchantable, but the fact that plaintiffs may have put into floating water some logs that were not good, or sound, or merchantable, if such shall be found by you from the evidence to be the fact, did not excuse the defendants from their agreement to receive and pay for those which were good, sound, and merchantable. But if it would be impossible to separate them, or it could not be done without great expense, it would excuse them."

The evidence bearing upon this point, as disclosed by the bill of exceptions, tends to show, that after the logs were in the water, one of the appellants told one of the respondents they would take and pay for all the good logs, but could not divide and separate them from the rotten ones in the creek, and that was the reason why they had refused to receive them; that there was plenty of good, merchantable logs in the timber furnished by appellants, if respondents had seen proper to select and cut them, but a large proportion of the logs put in floating water above the boom were rotten and unmerchantable, and they were mixed up with good ones. Thus it will be seen that the evidence tends to show

that the respondents undertook to deliver a lot of good, sound, and merchantable logs, mixed promiscuously with a large proportion of rotten and unmerchantable ones. This they could not do, as by the terms of the contract they were required to deliver a certain quality of logs unincumbered with a large number of other logs not receivable under the contract. Appellants having taken the precaution to contract for good, sound, and merchantable logs, should not have been subjected to any considerable expense and trouble in separating the good logs from the bad ones.

But it is insisted by respondents that no injury resulted to appellants from the refusal of this instruction, for the reason that it was afterwards substantially given in the instruction that followed. That instruction is to the effect that while appellants are not bound to scale, receive, or pay for any logs not good, sound, or merchantable, the fact that some of that quality may have been put in floating water by respondents, did not excuse the appellants from their agreement to receive and pay for such as were good, sound, and merchantable. So much of the instruction is not objectionable, but the clause which follows is. It is in these words: "But if it would be impossible to separate them, or if it could not be done without great expense, it would excuse them." In our opinion, this instruction fails to embrace the substance of the one asked for and refused.

The court further instructed the jury as follows: "The parties to this action have reduced their contract to writing —all the terms of the contract must be sought in the written agreement. The construction of the contract is a matter of law for the court. An issue is made in the pleading as to when the contract price for any logs became due and payable. This issue must be decided by the court. It depends altogether upon the construction of the written contract. I now instruct you that by the terms of the contract, the purchase price of all logs delivered under the contract became due immediately upon their delivery at the boom of defendants. Defendants agreed to receive and pay for all good, sound, merchantable logs delivered to them at the boom by plaintiffs, four dollars and twenty-five

cents per thousand feet. This price they agreed to pay when the logs were delivered at the boom." To this instruction appellants excepted, and assign it as error.

It is insisted by the appellants that this contract is entire and not severable; that it should be construed to mean that respondents were to furnish one million feet of logs within the year, at the rate of four dollars and twenty-five cents per thousand feet, and to keep a sufficient number on hand to keep the mill running—payment to be made on its fulfillment and not on the delivery of each one hundred thousand feet.

As to whether this contract is entire or severable is a question of construction, which depends upon the intention of the parties, to be ascertained from the language employed and the subject-matter of the contract. If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. And the same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed. (2 Parsons on Contracts, 517.)

Adopting this rule of construction, we have reached the conclusion that the contract is severable and not entire. While the whole number of logs to be delivered was one million of feet at a certain price per thousand, yet they were to be delivered in quantities of one hundred thousand feet at a time, and the contract being silent as to the time of payment, it will be implied that they were to be paid for when delivered.

Error having been committed in the refusal of the court to instruct, as asked by the appellants, the judgment is reversed and the cause remanded to the court below for a new trial.