Argued Feb. 23, decided April 4, affirmed on rehearing Oct. 3, 1911.

## KREBS HOP CO. *v.* LIVESLEY.

[114 Pac. 944: 118 Pac. 165.]

CONTRACTS—BREACH—REMEDIES.

1. One party to a contract cannot, by any act or declaration respecting his intention not to perform, compel the other party to immediately seek his redress as for a breach; but the latter may await the time for performance, and, on breach, elect between the remedies open to him at that time.

ACTION—SPLITTING CAUSE OF ACTION—SEVERABLE CONTRACT.

2. Severable contracts may be severed for the purpose of enforcing rights as they accrue.

SALES—NATURE—ENTIRE AND SEVERABLE.

3. Where a corporation agreed to sell a partnership 500,000 pounds of hops to be raised during the five succeeding years, 100,000 pounds to be sold each year, the contract was severable, each installment being separate; and hence a failure of the seller to offer to deliver the crop of one year would not preclude his recovery upon a refusal of the purchaser to accept the crop of another year.

JUDGMENT—CONCLUSIVENESS—MATTERS CONCLUDED.

4. Where a contract for the sale of 500,000 pounds of hops provided that 100,000 pounds of the growth of each of five successive years should be delivered by the 15th of October of each year, a recovery for the purchaser's refusal to accept the hops for one year would not preclude a recovery for a refusal to accept the hops of a subsequent year.

Sales— Measure of Damages— Breach of Contract— Failure to Perform—Market Value.

5. The seller's measure of damages for refusal to accept goods is the difference between the contract price and the market price at the time and place of delivery, though the purchaser offers the seller a slightly greater price than the market value, as the seller is not required to accept it.

Sales—Remedy of Seller—Measure of Damages—Reduction of Damage.

6. A purchaser of hops repudiated his contract, but at the same time offered to buy from the seller, at a price slightly in advance of the market price, the amount of hops he had contracted for. *Held,* that the refusal of the seller to accept the purchaser's second offer for the hops could not deprive him of the right to recover the difference between the contract and the market price of the hops at the time and place of delivery; for the acceptance of that offer would have imperiled his rights under the first contract, on the theory that the second contract supplanted it.

Sales—Remedies of Seller in General.

7. On the refusal of a purchaser to accept goods, the vendor may either hold the property for the purchaser and recover the entire purchase money, or sell them after notice to the purchaser, as his agent, and recover the difference between the contract price and the selling price, or may retain them as his own, and recover the difference between the contract and market prices at the time and place of delivery.

From Marion: George H. Burnett, Judge.

Statement by Mr. Justice Bean.

This is an action for damages by the Krebs Hop Company against T. A. Livesley & Co., on account of the failure of the latter to perform certain conditions of the following contract, during the year 1908:

"Salem, Oregon, August 25, 1904.

"In consideration of one dollar, the receipt whereof is hereby acknowledged, Krebs Hop Company, a corporation doing business under the laws of the State of Oregon, sells, and T. A. Livesley & Co., copartnership, buys five hundred thousand pounds of prime Oregon hops, subject to inspection by T. A. Livesley & Co., or their authorized agent, at the agreed price of fourteen cents per pound, said hops to be the product of and to be grown on the Krebs Hop Company, Buena Vista Farm, better known as the Henderson W. Murphy farm, situated on the west bank of the Willamette River, being about three miles S. E. of Independence, in Polk County, Oregon, on the left-hand side of the wagon road, going from Independ-

ence to Beuna Vista, the said purchaser to have the preference and right of selection over all other contracts. Said hops to be delivered as follows: One hundred thousand pounds (100,000) of the growth of 1905, one hundred thousand pounds (100,000) of the growth of 1906, one hundred thousand pounds (100,000) of the growth of 1907, one hundred thousand pounds (100,000) of the growth of 1908, and one hundred thousand pounds (100,-000) of the growth of 1909, f. o. b. cars Independence, Oregon, or f. o. b. boat Murphy's Landing, not later than October 15th of each of the above years. In case there are not a sufficient amount of prime hops grown on the above-described farm to fulfill said contract, the seller agrees to deliver hops of like quality grown elsewhere in fulfillment of said contract. This contract is not transferable without the written consent of both parties hereto and to be binding upon the assigns, executors and administrators. The buyers agree to pay the purchase price in the following manner, to wit: Two thousand dollars ($2,000.00) between the first and fifteenth of April of each year and two thousand dollars ($2,000.00) between the first and fifteenth of May of each year and six thousand dollars ($6,000.00) between the first and fifth of September of each year and the balance, four thousand dollars (($4,000.00) on delivery and acceptance by the buyers of said hops, each year, during the life of this contract, cultivation advances to bear interest at the rate of six per cent.

"Witnessed by

.................................     "Krebs Hop Company sellers,

.................................       "By Conrad Krebs, president.

                              "T. A. Livesley & Co., buyers.

"[Corporate Seal.]"

Plaintiff alleges that it is a corporation; that the defendants are partners, and, after setting out the contract *in extenso*, alleges in substance that in previous years the defendants designated the place of delivery, where the hops were accordingly delivered; that, in order to ascertain where it would be expected to make such delivery on October 15, 1908, plaintiff notified defendants it had 100,000 pounds of hops ready for delivery, and requested to know the place defendants desired same

to be delivered, to which notice defendants replied by let-
ter, refusing to designate either place or point of delivery,
stating that they did not regard the contract as in force,
and declining to recognize the same in any way. Plaintiff
further alleges that it duly complied with and performed
all the conditions of the contract on its part to be kept
and performed, and that it was, on the 15th of October,
1908, and prior thereto, ready and willing to deliver 100,-
000 pounds of prime Oregon hops, grown in 1908 on the
premises described in the contract, to defendants at either
of the places mentioned, and had defendants named such
place of delivery and attended thereat to receive the hops,
would have tendered and delivered same. But because
of the wrongful conduct of the defendants, plaintiff was
unable either to deliver or tender delivery of said hops.
That defendants wrongfully failed, neglected, and refused
to receive said hops, and to pay plaintiff therefor accord-
ing to the terms of said contract, or at all, and that upon
said date hops of the kind and quality described in said
contract were worth in the market, at the time and place
of delivery, seven cents per pound, and no more.

The defendants by their answer put in issue all the
allegations of the complaint, except the incorporation of
plaintiff, the partnership of defendants, the execution
of the contract, and the market value of the hops on
October 15, 1908, in addition thereto setting up seven
affirmative defenses as follows: (1) In bar, the sale of
the hopyard to Ladd & Bush, and the assignment of the
payments to accrue thereon; that thereby the plaintiff
made default in the contract, for which default the defend-
ants on the 24th day of March, 1906, rescinded the con-
tract. (2) In estoppel, that plaintiff, after the execution
of the contract, conveyed the hopyard and assigned the
contract without the knowledge of defendants, and aban-
doned and retired from the contract, and that by reason
thereof defendants themselves retired from and rescinded

Sig. 19

the contract. (3) Plaintiff's breach of the contract in the year 1906 in not delivering or offering to deliver any hops during that year. (4) In estoppel, all the matters set forth in the second and third defenses. (5) Plaintiff's claim that hops were worth but seven cents per pound should not be heard, because defendants offered to pay eight cents per pound therefor, for which plaintiff refused to sell. (6) The recovery of the judgment on the contract of August 25, 1904, in the action brought by plaintiff against defendants in January, 1908. (7) Defendants pleaded in estoppel judgment in the action commenced in January, 1908: *Krebs Hop Co.* v. *Livesley,* 55 Or. 227 (104 Pac. 3).

Trial was had, resulting in a judgment in favor of plaintiff for $7,000, from which defendants appeal.

AFFIRMED.

For appellants there was a brief with oral arguments by *Mr. Wirt Minor* and *Mr. William M. Kaiser.*

For respondent there was a brief with oral arguments by *Mr. John A. Carson* and *Mr. Thomas Brown.*

MR. JUSTICE BEAN delivered the opinion of the court.

MR. JUSTICE MCBRIDE dissents.

A brief history of the case pertaining to this contract is as follows: The contract having been fully performed in 1905, in 1906 before the time for delivery arrived, plaintiff brought an action and recovered judgment for $4,000 for the April and May payments of that year: *Krebs Hop Co.* v. *Livesley & Co.,* 51 Or. 527 (92 Pac. 1084). Thereafter no hops of the crop of 1906 having been delivered to defendants, they brought suit against plaintiff for an accounting, and to offset and stay the enforcement of the judgment for $4,000, resulting in a decree in favor of Krebs Hop Company. On appeal to this court, Mr. Justice SLATER, having been a counsel, did

not sit, and the court being equally divided, the decree of the trial court was affirmed. *Livesley & Co.* v. *Krebs Hop Co.,* 57 Or. 352 (97 Pac. 718: 107 Pac. 460: 112 Pac. 1). As to the crop of 1907, plaintiff obtained a judgment against defendants for $6,000 damages for failure to perform. *Krebs Hop Co.* v. *Livesley & Co.,* 55 Or. 227 (104 Pac. 3).

The principal point relied upon by defendants for the reversal of this case is their contention that the contract out of which this action arose is an entire contract, and, plaintiff having obtained certain judgments against defendants on account of their alleged breach thereof, it is barred and estopped from recovering anything in this action. That the contract being an entire contract, the plaintiff, on account of the breach thereof on the part of defendants, may recover but once on account of such breach, and that the measure of damages for the breach of the contract, assuming that defendants were guilty of such breach, is the difference between the contract price and the market value of 400,000 pounds of hops on March 24, 1906, the date on which defendants gave notice that the contract was abrogated. From this contention it seems that defendants assumed they could, by their own acts or declarations, terminate the contract without the aid or consent of the other party, naming the remedy plaintiff should pursue. It appears defendants sought to cancel the contract, but plaintiff refused to acquiesce therein, or to permit defendants to rescind. As stated in *L. S. & M. S. Ry. Co.* v. *Richards,* 152 Ill. 59, 80 (38 N. E. 773, 777: 30 L. R. A. 33) :

"It is well settled that, where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: (1) He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or (2) he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to per-

form, and at the end of the time specified in the contract for performance, sue and recover under the contract; or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing."

The plaintiff in this case has elected to rely upon the second remedy—to keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified for performance, sue and recover.

1. Upon reason and authority one party cannot, by any act or declaration, destroy the binding force of a contract: *Kadish* v. *Young*, 108 Ill. 170, 176 (43 Am. Rep. 548) ; 24 Am. & Eng. Enc. Law (2 ed.) 1084. As stated by Sedgwick, Damages (6 ed.) 340:

"An effort has been made in many cases by the purchaser to relieve himself from the contract of sale before the time fixed for performance by giving notice that he would not be ready to complete the agreement, and in these cases it has been insisted that the damages should be estimated as at the time of giving notice; but the English courts have justly denied the right of either party to rescind the agreement, and have adhered to the day of the breach as the period for estimating damages."

And in *Kadish* v. *Young*, 108 Ill. 170, 176 (43 Am. Rep. 548) :

"If a party is not compelled to accept the declarations of the other party to a contract that he will not perform it, as a breach, it must logically follow that he is under no obligation to regard that declaration for any purpose, for, as we have seen, the theory in such case, as laid down by Cockburn, C. J., in *Frost* v. *Knight* (L. R. 7 Exch. 111) is: 'He keeps the contract alive for the benefit of the other party, as well as his own. He remains subject to all his own obligations and liabilities under it, and enables the other party, not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstance which would justify him in declining to complete it.' "

This point is touched upon by Lord CAMPBELL in *Hochester* v. *De La Tour*, 2 El. & Bl. 678, in his statement that "the man who wrongfully renounces a contract into which he has deliberately entered cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has injured, and it seems reasonable to allow an option to the injured party, either to sue immediately, or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party and cannot be prejudicial to the wrongdoer." Quoting still further from this authority:

"It cannot be laid down as a universal rule that, where by agreement an act is to be done on a future day, no action can be brought for a breach of the agreement till the day for doing the act has arrived."

But from this it by no means follows that the injured party is compelled to bring action immediately upon the breach of the contract, as appears to be insisted upon in the case at bar, and thereby be deprived of his option of either of the three remedies named. In other words, in such cases the right of option is given to the injured party, and not to the party in the wrong: *Roehm* v. *Horst,* 178 U. S. 1 (20 Sup. Ct. 780: 44 L. Ed. 953).

2. A severable contract may be severed for the purpose of enforcing rights as they accrue. *Norrington* v. *Wright,* (C. C.) 5 Fed. 768:

"A contract to do several things at different times is divisible in its nature, and an action will lie upon each default. * * But when a party has distinct demands or existing causes of action growing out of the same contract or resting in matter of account, which may be joined and sued for in the same action, they must be joined; they constitute an entire cause of action or demand; and if they be split up and a suit be brought for a part only, and subsequently a second suit for the residue, the first action, if determined on the merits, will be a bar. This is not to be carried so far as to bar an action on the

contract because judgment has been obtained against the party who failed to perform for a tort resulting from the breach. * * But it is entire claims only which cannot be divided within this rule; those which are single and indivisible in their nature. The cause of action in the different suits must be the same. The rule does not prevent, nor is there any principle which precludes, the prosecution of several actions upon distinct causes of action. * * Perhaps as simple and safe a test as the subject admits of by which to determine whether the case belongs to one class or the other is by inquiring whether it rests upon one or several acts or agreements. In the case of torts each trespass, conversion, or fraud gives a cause of action, and but a single one; in respect to contracts, express or implied, each affords one and only one cause of action. The case of a contract containing several stipulations to be performed at different times is no exception; although an action may be maintained upon each stipulation as it is broken before the time for the performance of the others the ground of action is the stipulation which is in the nature of a several contract." 1 Sutherland, Damages (2 ed.) § 110.

Quoting from noteworthy cases of this State on this feature, Justice BURNETT, in *Southwell* v. *Beezley*, 5 Or. 458, ruled that, "the question whether a contract is entire or separable, is often of great importance. Any contract may consist of many parts, and those may be considered as parts of one whole, or as so many distinct contracts, entered into at one time and expressed in the same instrument, but not thereby made one contract. No precise rule can be given by which this question in a given case may be settled. Like most other questions of construction, it depends to some extent upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject-matter of the contract," citing 3 Parsons, Contracts, 517.

In *Tenny* v. *Mulvaney*, 8 Or. 129, where the contract provided for the cutting and delivery at Mulvaney's mill of 1,000,000 feet of merchantable logs within a year, at

$4.25 per thousand feet, to be scaled and received as every 100,000 feet were placed in a certain creek, it will be noticed that the contract required settlement upon the delivery of each 100,000 feet, concerning which Justice PRIM states:

"As to whether this contract is entire or severable is a question of construction, which depends upon the intention of the parties, to be ascertained from the language employed and the subject-matter of the contract. If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable."

While in *Oliver* v. *Oregon Sugar Co.*, 42 Or. 276 (70 Pac. 902), we note Justice BEAN says:

"The beets were to be paid for by the ton, and when the quantity delivered by either of the classes of cars specified was ascertained the contract was thereby so far performed that the rights and obligations of the parties with reference to such car loads were fully fixed and established. Whether a contract is entire or severable is a question of construction, depending upon the intention of the parties, to be ascertained and determined from the language employed, the subject-matter, and the surrounding circumstances."

And in *Longfellow* v. *Huffman*, 55 Or. 481 (104 Pac. 961), wherein the contract is similar to the one at bar, Chief Justice MOORE, in disposing of the question, remarks:

"The trial court evidently proceeded on the theory that the contract sued on was entire, and that the plaintiff's failure to tender the value of the lambs raised in the year 1905 worked a forfeiture of all his rights to this increase, thus authorizing the defendants to rescind the agreement, for which reason a verdict for the latter was directed. The legal principle thus adopted is amply supported by reputable authority. (Citing authorities.) * * This court, however, is committed to a different rule announced by Mr. Justice PRIM in *Tenny* v. *Mulvaney*, 8 Or. 129, 137."

See, also, *Barnes* v. *Leidigh*, 46 Or. 43 (79 Pac. 51).

3. The ruling in the case of *Longfellow* v. *Huffman,* 55 Or. 481 (104 Pac. 961), is decisive of the question raised by defendants, as to the failure of plaintiff to offer to deliver hops of the crop of 1906.

4. The bare fact that two causes of action spring out of the same contract does not *ipso facto* render a judgment on one a bar to a suit on another: *Perry* v. *Dickerson,* 85 N. Y. 345 (39 Am. Rep. 663) :

"Various tests have been suggested for determining whether the judgment recovered in one action is a bar to a subsequent action. 'The principal consideration is whether it be precisely the same cause of action in both. * * And one great criterion of this identity is that the same evidence will maintain both actions." *Kitchen* v. *Campbell,* 2 W. Bl. 827.

"It is not a test of the right of a plaintiff to maintain separate actions that all the claims might have been prosecuted in a single action." *Perry* v. *Dickerson,* 85 N. Y. 345 (39 Am. Rep. 663).

Application of the rule does not depend upon any technical consideration of the identity of the form of action, but upon matter of substance. *Brunsden* v. *Humphrey,* 14 Q. B. Div. 141.

"If different allegations are required in the pleading and different evidence on the hearing, the cause of action is not split." *Stark* v. *Starr,* 94 U. S. 477, 485 (24 L. Ed. 276).

To the same effect, see *Gentry* v. *Pacific L. Co.,* 45 Or. 233 (77 Pac. 115) ; *La Follett* v. *Mitchell,* 42 Or. 465 (69 Pac. 916: 95 Am. St. Rep. 780). The stipulation as to the sale of the crop of hops of 1908 in the contract sued upon is in the nature of a several contract, and the former judgment is not a bar to this action.

5. As to the measure of damages, in ordinary cases of contract of sale of personal property for future delivery, when the purchaser fails to receive and pay therefor, the measure of damages is the difference between the con-

tract price and the market or current value of the property at the time and place of delivery, and notice from the buyer to the seller, before the day of delivery, that he will not receive the property, does not affect this rule, unless the seller upon receiving such notice shall elect to then terminate the contract: *Kadish* v. *Young,* 108 Ill. 170, 176 (43 Am. Rep. 548) ; *McNaught* v. *Dodson,* 49 Ill. 446; *Johnson* v. *Allen,* 78 Ala. 387 (56 Am. Rep. 34) ; *Cahen* v. *Platt,* 69 N. Y. 348 (25 Am. Rep. 203) ; Sedgwick, Damages (6 ed.) 340.   Also *Phillpotts* v. *Evans,* 5 M. & W. 475; *Haines* v. *Tucker,* 50 N. H. 307, 314; *Cherry Valley I. Works* v. *Florence I. R. Co.,* 64 Fed. 569 (12 C. C. A. 306). This rule was applied by the lower court upon the trial of this cause, and we do not think it was incumbent upon plaintiff to accept defendants' offer of eight cents per pound, or that it was bound to do anything, except as required by the terms of the contract. The market value of the hops on October 15, 1908, the date of the alleged breach of the contract, was admitted by defendants' answer to be seven cents per pound.   Again quoting from *Kadish* v. *Young,* 108 Ill. 170, 176 (43 Am. Rep. 348) :

"Nothing would seem to be plainer than that while the contract is still subsisting and unbroken the parties can only be compelled to do that which its terms require."

All other errors deemed of importance were settled in the former actions referred to.

The judgment of the lower court is affirmed.

·   AFFIRMED.

Mr. Justice BURNETT took no part in the consideration of this case.   Mr. Justice MCBRIDE dissents.

Decided   October   3,   1911.

## ON PETITION FOR REHEARING.

[118 Pac. 165.]

MR. JUSTICE BEAN delivered the opinion of the court.

Defendants petition for a rehearing upon the point involving the measure of damages. For a statement and former opinion of the case, see 114 Pac. 944.

Prior to the last date for the delivery of 100,000 pounds of hops for the year 1908, according to the terms of the contract, plaintiff sent the following letter to defendants:

"Salem, Oregon, Oct. 8, 1908.
"Messrs. T. A. Livesley & Co.,
       "Salem, Oregon.

"Dear Sirs: Our contract with you, dated 25th August, 1904, for the sale of one hundred thousand pounds of hops of the growth of the years 1905 to 1909, inclusive, provides, as you are aware, that we shall deliver the hops not later than October 15th, f. o. b. cars Independence or f. o. b. boat at Murphy's Landing. In 1905 we delivered the hops on board boat at Murphy's Landing at your request. The contract does not state whether we or you have the option of delivering on board cars or on board boat, but in any event we are willing to deliver the hops this year wherever you may designate. Kindly therefore let us know at once by return mail whether you desire the hops delivered on board cars at Independence or on board boat at Murphy's Landing, so that we may provide the cars or boat for delivery as you may desire. We have this year one hundred thousand pounds of hops of the kind and quality described in the contract, and we hope you will be pleased with the same. Inviting your immediate response, we are,

                    "Yours truly,
                         "Krebs Hop Company.,
                    "By Leonard Krebs, vice president."

On the last date stipulated for the delivery of the hops for that year, defendants replied to the above letter as follows:

"Oct. 15th, 1908.

"Krebs Hop Co.,

"Salem, Oregon.

"Gentlemen: We have received your registered letter of the 8th inst. You are aware that we do not regard this contract as in force. You also know that we do not think it is our business to say whether you should deliver the hops, if the contract were in force, at Murphy's Landing or at Independence. We decline to recognize the contract in any way. We are in the market however to buy hops, and to pay the market price for such hops as we wish. We have no objection to buying your hops independently of any contract. If you have 100,000 pounds of hops of the growth of 1908, and the same are prime Oregon hops, and if you wish to sell them to us subject to our inspection, we are willing to buy this quantity of hops of said uality from you, and will pay you for the same, f. o. b. cars at Independence, Oregon, eight cents per pound, provided you deliver the same not later than the 25th day of October, 1908, and if you accept this offer, give us notice at once on what day you will have the same ready for inspection.

"Yours truly,

"T. A. Livesley & Co."

It was admitted by defendants in the pleadings that on the 15th day of October, 1908, hops of the kind and quality described in the contract were worth in the market at the time and place of delivery the sum of seven cents per pound, and no more, and upon the trial the difference between this price and the contract price (14 cents) was taken as the measure of damages.

6. Defendants in their answer pleaded that by reason of the defendants' offer and tender of eight cents per pound for the amount, kind, and quality of hops described in the contract of sale plaintiff was estopped from saying the market price of such hops was but seven cents per pound, and to substantiate such plea upon the trial offered

in evidence the letter referred to, of October 15, 1908, which was rejected. Defendants contend that under the rule, "where two parties have made a contract which one of them has broken, the other must make reasonable exertion to render his injury as light as possible, and he cannot recover from the party breaking the contract damages which would have been avoided, had he performed his duty" (citing *Uhlig* v. *Barnum,* 43 Neb. 584, 595: 61 N. W. 749) ; that the plaintiff was in duty bound to accept the offer of defendants at his peril; in other words, that the measure of plaintiff's damages is the difference between the contract price of the hops and the price offered by defendants, which would make a difference of $1,000 in the judgment. On the part of plaintiff, it is maintained that the true rule of damages was applied; that the letter offered in evidence contained a number of conditions, and was an offer by defendants to negotiate or make a new contract, and was not competent evidence of value or the market price (citing 2 Suth., Damages [2 ed.] § 654), and it was not the duty of plaintiff to accept such offer.

7. With the principle enunciated in *Uhlig* v. *Barnum,* 43 Neb. 584, 595 (61 N. W. 749), no exception can be taken; but was it the duty of plaintiff to accept such offer? And would it have been reasonably safe in so doing, or can the defendants, as a matter of right, claim the benefit thereof? As held in *Dustan* v. *McAndrew,* 44 N. Y. 72, upon the failure of a purchaser to perform a contract for the sale of personal property, the vendor, as a general rule, has the election of three remedies: (1) To hold the property for the purchaser, and to recover of him the entire purchase money; (2) to sell it, after notice to the purchaser, as his agent for that purpose, and recover the difference between the contract price and that realized on the sale; (3) to retain it as his own, and recover the difference between the contract and market

prices at the time and place of delivery; citing 2 Parsons, Contracts 484; Sedgwick, Damages, 282; *Lewis* v. *Greider,* 49 Barb. (N. Y.) 606; *Pollen* v. *Le Roy,* 30 N. Y. 549.

In the case at bar the plaintiff chose and the trial court applied the third rule. In *Havemeyer* v. *Cunningham,* 35 Barb. (N. Y.) 515, in an action of damages for the breach of a contract to sell an invoice of sugar, brought by the vendee against the vendor for failure to deliver the sugar, it was held that the rule of damages for not delivering the sugar was the difference between the contract price and the market value on the day of delivery, and that this rule could not be varied by an offer of defendants to sell to the plaintiff at a price below the value on the day of delivery. Mr. Justice INGRAHAM, at page 522 of 35 Barb. (N. Y.), says:

"The plaintiffs had a right to a delivery of the property purchased at the stipulated price, and the defendants could not relieve themselves from the consequences of their refusal to deliver by an offer to sell at a higher price, although less than the subsequent market value. Such an offer, if accepted by the plaintiffs before the time of performance arrived, might have exposed them to the charge of having abandoned the first contract."

The rules of damages apply with equal force to both buyer and seller, and Krebs Hop Company had the right to demand and receive the stipulated price upon a delivery of the hops which were tendered by it, according to the terms of the contract, and defendants had no right to any advantage to be gained by offering to make a new contract. It has been held that where a new contract is made by the parties in regard to the same subject-matter, which entirely supersedes the first contract, no action can be maintained on a ground of a breach of the first contract: *Consumers' Cotton Oil Co.* v. *Ashburn,* 81 Fed. 331 (26 C. C. A. 436); note, 35 Cyc. 615. In the last mentioned case, it was claimed that there was a contract of September 13, 1893, for sale by the company to Ash-

burn of 2,600 tons of hulls at $2.75 per ton, and 600 tons of meal at $17.25 per ton, and that a subsequent contract was made by the parties for the sale of 1,000 tons of hulls at $4.00 and 300 tons of meal at $20. In an action by Ashburn for damages for the failure of the company to deliver the property according to the first contract, the trial court, at the request of counsel for the company, gave the following instruction:

"The jury in this case are instructed, as a matter of law, that where a contract has been made between two persons, and at a subsequent period another contract, having reference to the same subject-matter, but changing the relations of the first contract, is entered into, the last contract controls or rescinds the first, though there be no such effect expressed between the parties. * *"

To which the court added:

"* * You will determine whether or not, at the time of making the second contract, it was the intention of the parties making the contract to waive or modify the first contract, and whether it was the intention of the parties to make a new contract, separate and independent of the first, and without any relation thereto."

In regard to this modification of the instruction requested, it is said:

"The question was, and is here, what was the legal effect of the second contract on the first? Did the second supersede, abrogate, and take the place of the first contract as a matter of law? If the legal effect of the second contract, referring to and covering the same general subject-matter as the first contract, was that it took the place of the first contract, then the intention of the parties is not material. We think the effect of the second contract was, as contended for by the counsel for the company, that it superseded the first entirely. * * When he entered into the second contract, he lost all rights he might have claimed under the first. If he desired to insist upon his rights under the first contract, he should have stood by it, insisting on its performance, and not have made a subsequent arrangement."

In *United States ex rel. International Con. Co.* v. *Lamont,* 155 U. S. 303, 309 (15 Sup. Ct. 97, 99: 39 L. Ed. 160), the following excerpt shows the view of that court upon a similar question:

"Nor does the fact that in making his second contract the relator protested that he had rights under the first better his position. If he had any such rights and desired to maintain them, he should have abstained from putting himself in a position where he voluntarily took advantage of the second opportunity to secure the work. A party cannot avoid the legal consequences of his acts by protesting at the time he does them that he does not intend to subject himself to such consequences. In the case of *Bank of United States* v. *Bank of Washington,* 6 Pet. 8 (8 L. Ed. 299), certain payments had been made to the first bank upon a decision by the court below, with notice that the payer intended to take the case to the Supreme Court of the United States, and would expect the payee (the Bank of the United States) to refund the money, if that court should reverse the decision of the court below and hold that it was not due. The court said: 'No notice whatever could change the rights of the parties, so as to make the Bank of the United States responsible to refund the money.' The whole case of this relator is covered by *Gilbert* v. *United States,* 8 Wall. 358 (19 L. Ed. 303), in which this court through Mr. Justice MILLER, said: 'If the claimants had any objection to the provisions of the contract they signed, they should have refused to make it. Having made it and executed it, their mouths are closed against any denial that it superseded all previous arrangements.' "

The offer of defendants contained in the letter, as its terms indicate, was a proposal to make a new contract, concerning the same subject-matter embraced in the original contract, and we do not think the plaintiff was required to accept the same or be governed thereby. It could not make the new contract without danger of further complicating the issues in a prospective action.

We adhere to our former opinion.

AFFIRMED: FORMER OPINION APPROVED.

MR. JUSTICE BURNETT took no part in this decision.