*718 OPINION.
Turner :
The petitioner contends that the basis for computing the depreciation deduction on its plant and the profit realized upon the sale thereof is $146,800, the purchase price recited in the contract of October 10,1980, and that the contract of November 7,1932, contrary to its expressed terms, was not a contract of sale but was a supplemental contract entered into for the purpose of effecting the payment of damages to petitioner and the crediting of the damages so paid on the purchase price of the plant, which remained and continued to be $146,800 as originally agreed. In support of its claim the petitioner has offered various documents and the testimony of witnesses for the purpose of showing that the warranties in the contract of October 10, 1930, were breached through the failure of the plant to produce dry ice of the quantity and quality prescribed, that substantial damages were thereby sustained, the amount of which was negotiated, determined, and agreed upon by the petitioner and the York Corporation, and that the contract of November 7, 1932, did nothing more than state the balance due between them, the amount so stated being the purchase price of the plant as shown by the contract of October 10, 1930, less the damages agreed upon and plus $10,467 representing the amount of a loan and the interest thereon then due and owing by the petitioner to the York Corporation.
The respondent, on the other hand, claims that the contract of November 7, 1932, expressly rescinded the contract of October 10, 1930, and effected the sale of the plant to petitioner at a price and on l ernes entirely different from those expressed in the earlier agreement and accordingly the basis to the petitioner for computing the depreciation deduction and the profit upon the subsequent sale of the plant is the purchase price finally agreed upon and reflected by the contract of November 7, 1932. With respect to the contention of the petitioner, the respondent, calling attention to the description of the items composing the sum of $84,800, the amount by which the purchase price of the plant was adjusted, advances the proposition that the said sum may not properly be termed damages under the contract of October 10,1930, since that contract provided for direct damages only and consequential damages were expressly excluded, the obvious inference being that the York Corporation, though not liable for damages, but realizing and recognizing the difficulties which had been encountered by its first purchaser of dry ice machinery, had agreed in the contract of November 7, 1932, to a reduced purchase price for the plant.
The record discloses certain facts which give color to the proposition as stated. Under the contract of October 10,1930, the contractor, *719 the York Corporation, guaranteed workmanship and materials for one year provided the machinery was operated in accordance with its instructions. It also guaranteed that the machinery so furnished would “under test”, when operated in accordance with its instructions, be capable of producing ten tons of solid carbon dioxide per day of 24 hours. It was further stated that the “test” contemplated by the agreement was to be made under the direction of the contractor and that no breach of the guaranty, except with respect to workmanship and materials, could be shown other than by such “test.” If the purchaser failed to notify the contractor in writing within a period of thirty days of any claim that the plant did not fulfill the terms and requirements of the contract, such failure was to constitute a complete acceptance thereof. It was expressly provided that the guaranties and warranties were not to be treated as conditional “but as collateral undertakings entitling the purchaser to all direct legal damages but not to consequential damages for their breach.” The petitioner not only filed no notice within thirty days that the plant did not fulfill the terms and requirements of the contract, but, to the contrary, accepted the plant and, while there were numerous complaints thereafter, it also appears that upon operation “under test” by the York Corporation using its own employees the plant did, with minor adjustments and replacements, produce dry ice of the quantity and quality guaranteed and its performance in that respect was accepted and acknowledged by the petitioner. It also appears that even though the sum of $84,800 as damages was agreed to by the York Corporation, many of the items making up that sum may not reasonably be classified as direct damages as contrasted with consequential damages. To illustrate: $7,639.40 is described as interest on the investment of petitioner in buildings and equipment for the period of unsatisfactory operation; $1,390.77 is designated as interest on amounts previously paid to the York Corporation, presumably toward the purchase price of the plant; $33,030 is classified as depreciation; while $10,060.79 is described as an amount agreed upon to compensate for loss of profits. It is difficult to see how these items, under the circumstances, might be classified as direct damages provided for by the contract of October 10, 1930, instead of consequential damages which were expressly excluded.
In the view we take of the case, however, that question is not present. Williston on Contracts, vol. Ill, par. 1826, states:
Also, “A subsequent contract completely covering the subject matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two contracts cannot stand together, rescinds, substitutes, and is substituted for the earlier contract and becomes the only agreement of the parties on the subject.” Housekeeper Pub. Co. v. Swift et al, 97 Fed. 290.
*720 In United States ex rel. International Contracting Co. v, Lamont, 155 U. S. 303, the Court quoted, from Gilbert v, United States, 8 Wall. 358, to the effect that:
If the claimants had any objection to the provisions of the contract they signed, they should have refused to make it. Having made it and executed it, their mouths are closed against any denial that it superseded all previous arrangements.
In Joseph v. Rottschafer, 248 Mich. 606; 227 N. W. 786, the court quoted from Black on Rescission and Cancellation (2d Ed.) § 8, as follows:
Since it is always in the power of the parties to a contract to rescind or abrogate it by their mutual consent, they may accomplish this result by the substitution of a new contract, implying a mutual discharge from reciprocal obligations under the original contract and the restoration of the status quo or compensation for altered conditions, provided that the new contract shall be complete and binding in itself, and shall embrace each and all of the parties to the original contract.
Furthermore, it is legally possible to have mutual cancellation of an executory contract notwithstanding the contract has been partially performed. Denler & Denler Land Co. v. Eby, 277 Mich. 360; 269 N. W. 203; McBee Binder Co. v. Robinson Lumber Co., 267 Mich. 637; 255 N, W. 329.
In the instant case the contract of November 7, 1932, contained the expressed provision that the contract “executed under date of October 10, 1930, is hereby rescinded, and the rights of the parties under the said contract or arising out of the same are hereby mutually can-celled.” It also contains a provision whereunder the York Corporation agreed to sell and did sell the plant to the petitioner at a price and under terms which were entirely different from those fixed by the contract of October 10, 1930. Furthermore there appears to be no question that the amount actually paid by petitioner to the York Corporation in respect of the purchase of the said plant was the amount fixed by the contract of November 7, 1932. In the light of the authorities referred to we conclude and hold that the basis to the petitioner for the computation of its depreciation deductions herein and the profit derived from the sale of the plant is to be determined under the new contract. Of the amount of $72,467 therein stated, $10,467 admittedly represented a loan by the York Corporation to petitioner and the interest thereon. There is no contention that these items of loan and interest represented part of the purchase price of the plant. On these facts it must be concluded that the York Corporation sold the plant in question to the petitioner for the sum of $62,000 and that amount is its basis for determining its depreciation allowance and gain or loss upon sale,
*721 In the alternative the petitioner claims that the allowance of a credit in the amount of the claimed overpayment made on its amended return for 1932 should be directed against any deficiency determined herein. The amount paid on the basis of that return resulted from the inclusion in income for 1932 of a certain amount as gain realized by petitioner in connection with the adjustment agreed upon by it and the York Corporation on the purchase price of the dry ice plant. Congress has dealt with such claims in section 820 of the Revenue Act of 1938 and relief with respect thereto must rest on the applicability of that section.

Decision will be entered wnder Bule 50.